BRADFORD *v.* FUTRELL

[No. 246, September Term, 1960.]

*Decided June 13, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, HORNEY and SYBERT, JJ.

*Isidore Ginsberg,* with whom were *Ginsberg & Ginsberg, Hyman Ginsberg,* and *George T. Burroughs* on the brief, for appellant.

*Robert F. Hochwarth* and *Hal C. B. Clagett,* with whom were *Sasscer, Clagett & Powers, Eli Frank, Jr.,* and *Frank, Bernstein, Gutberlet & Conaway* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

The appellant, Jesse P. Bradford, appeals from a money decree entered against him by the Circuit Court for Prince George's County, sitting in Equity, in favor of his former wife, Mickey N. Futrell, who has remarried. The decree was passed on August 10, 1960, in a proceeding to ascertain the amount of unpaid installments owed by the appellant under an October, 1944, decree of the same court which granted the appellee a divorce from the appellant, awarded her the custody of their four minor children and required the appellant to pay to the appellee the sum of $20.00 per week for the

support of the children. After a full hearing, the chancellor found the appellant to be in arrears in the amount of $12,872.32 as of August 1, 1960 in the weekly support payments and entered a decree in that amount in favor of the appellee, with interest from August 1, 1960.

Although the eldest child had attained his majority, the decree required continued payments of $20.00 per week for the three younger children because of increased living costs. The appellant does not object to that portion of the decree. What he does contest is the size of the decretal award to his ex-wife. He complains that, in determining the arrearage figure, the chancellor should have allowed him full credit for all money and items of personal property given by him to the children themselves, even though he referred to them as gifts; that he should have been allowed a credit because the eldest child left the home of the appellee, resided with him for a short period and then entered the armed forces of the United States; and that he should have been given credit for a portion of the allotment which the appellee received because of her present husband's military service, since the Bradford children were claimed as dependents of their stepfather. The appellant also maintains that the chancellor erred in permitting appellee to make claim for payments due back to the divorce decree of 1944, and that, in any event, her whole claim for arrearages is barred by both laches and limitations.

After the parties were divorced in 1944 the appellant remarried. Shortly thereafter the appellee moved to Florida with the children because, she said, her ex-husband's unreasonable actions toward the children were harmful to them and kept her household in frequent turmoil. It is conceded that appellant made all required payments for the support of the children up to November 4, 1945. Thereafter his remittances ceased. Appellee, who had obtained work upon arrival in Florida, gave a graphic description of her struggle to provide food, clothing and shelter for herself and her four young boys and of the privations they endured, particularly after Bradford's payments ceased. On September 13, 1946, she married her present husband, an Air Force sergeant, who aided in maintenance of her children. Mrs. Futrell told of frequent

efforts to have Bradford make the support payments and of his replies that "he wasn't going to pay it, he didn't have to pay it". She stated that on one occasion she attempted to have an attorney collect the arrearages, but that this effort failed when the family moved from Florida to another State upon transfer of her husband. She said that frequent transfers of her husband to points distant from Maryland made it impossible to enforce payments from Bradford.

Mrs. Futrell stated that her eldest son, Phillip, had always been his father's favorite. She testified that since Bradford wouldn't send money to her, she "put the boy up to calling his father at Christmases, birthdays, graduation, and other special occasions", because she didn't like to see her sons do without the things that most children had. Bradford sent a number of checks, payable to Phillip, in response to the boy's calls, which were endorsed by the boy and cashed by his mother. The money, she said, sometimes went for clothes and sometimes for toys for all the children.

In addition, Bradford of his own accord sent various checks to the children with letters referring to them as birthday or holiday gifts, and on a few occasions also sent clothing, some of which Mrs. Futrell said was unsuited to the children. On one occasion, when Phillip asked him for a motor scooter, he purchased an automobile at a cost of $1,195, had it titled in Phillip's name and delivered it to the boy. Mrs. Futrell said this was a surprise gift, unwelcomed by her, at least. She said she taught her son to operate it and thereafter never drove it herself. She said that after a time it "broke down" and her ex-husband towed it back to Maryland and never returned it. On one of his more or less annual visits to the children in Florida, Bradford bought a television set for the children, for which he paid $186. Mrs. Futrell testified that after November 4, 1945, she received no money directly from her former husband.

Bradford maintains that all payments and credits claimed by him were made with the consent and acquiescence of Mrs. Futrell and that therefore he should have been allowed for all of them. He claims that Mrs. Futrell requested him to purchase the television set to keep the children off the street,

while she stated that a television dealer for whom one of the boys worked persuaded him to buy it.

At the hearing, the chancellor ruled that the appellant was not entitled to credit for checks which he had clearly designated as gifts, but that he would be allowed for checks (even though payable to the children) which were not described as gifts and the proceeds of which were received by Mrs. Futrell. The appellant received credit for clothing which he sent to the boys, as necessities, but not for the automobile and television set, on the ground that they were gifts and not necessities.

At the hearing Bradford claimed that a total allowance of $5,717.01 was due him for money and property advanced. The chancellor found that the items advanced clearly as gifts amounted in value to $2,149.33, and deducted that figure from Bradford's claimed credits, leaving an allowed credit of $3,567.68. The latter sum was thereupon deducted from $16,440, the total of payments accrued from the date of the divorce decree, resulting in the $12,872.32 decreed to be due and unpaid as of August 1, 1960.

Therefore, the questions raised on this appeal are: Whether appellant should have been given credit for the gifts, amounting to $2,149.33; whether he should have been given a credit because the son, Phillip, left his mother's home before attaining his majority; whether he should have been given credit for part of Mrs. Futrell's military allotment, since her present husband claimed her children as dependents; and whether Mrs. Futrell's claim for arrearages, or any part thereof, is barred by laches or limitations.

We proceed now to consideration of the question whether a father, subject to a decree requiring periodic payments to his former wife for support of their children, is entitled to allowance for gifts made by him directly to the children. This question does not appear to have been presented to this Court before, and neither party to this proceeding has cited any reported decision of a Maryland court on the subject, nor have we found any. The problem is discussed at length in 27B, C.J.S., *Divorce*, § 321 (1) (2), and in an annotation in 2 A.L.R. 2d 831, where numerous decisions from other jurisdictions are cited. At page 832 of the A.L.R. annotation appears the following appraisal of the cases by the annotator:

> "The subject matter of the present annotation is such as to prevent the formulation of general rules, since *the factual situation appears to be controlling in most cases*. But it may be stated generally that the courts in most jurisdictions recognize, although not expressly stating it as a general principle, that a father should be allowed credit for expenditures made while the child is in his custody or for other voluntary expenditures in the child's behalf where such payments, although at variance with the requirement that the payments be made to the mother, *constitute a substantial compliance with the spirit and intent of the decree*. The question of what constitutes substantial compliance depends, of course, upon the circumstances of each individual case; and it is to be noted that in many cases where the courts have assumed jurisdiction to determine the merits of the father's claim, credit for voluntary payments have been denied." (Emphasis supplied.)

There is considerable conflict among the cases as to whether *any* credit can be given for expenditures made by the father on behalf of his children other than as provided by the decree. One line of decisions is to the effect that since the obligation of the father has been fixed by the decree, it cannot be satisfied except by strict compliance with its terms, and the proper remedy for the father, if any remedy is called for, is a motion to modify the decree. A father may not himself determine the method of payment or to whom payment should be made. See, for example, *Cotton v. Wright*, 190 So. 665 (La. 1939); *Campbell v. Campbell*, 4 S. W. 2d 1112 (Ky. 1928); *Bradley v. Fowler*, 192 P. 2d 969 (Wash. 1948); *Roberts v. Roberts*, 226 S. W. 2d 579 (Ark. 1950).

Somewhat opposed to this view are decisions holding that where "compulsion of circumstances" makes necessary the direct expenditures by the husband, he will be given credit when the expenditures constitute "substantial compliance with the spirit and intent of the decree". *Jackson v. Jackson*, 209 S. W. 2d 79 (Ky. 1948); *Schlom v. Schlom*, 115 So. 197

(Miss. 1928); *Mooty v. Mooty,* 179 So. 155 (Fla. 1938); *Mason v. Mason,* 34 P. 2d 328 (Ore. 1934). There appears to be no general rule as to when the circumstances will demand crediting the husband, but the result seems to depend in many cases on the finding of some express or implied consent of the mother to a mode of payment other than that called for in the decree. In this regard, see *Briggs v. Briggs,* 165 P. 2d 772 (Ore. 1946).

In the absence of some finding of consent by the mother, most courts refuse to allow a husband to dictate how he will meet the requirements for support payments when the mode of payment is fixed by a decree of court. Thus he will not be credited for payments made when he unnecessarily interposed himself as a volunteer and made payments direct to the children of his own accord. *Wills v. Baker,* 214 S. W. 2d 748 (Mo. 1948); *Openshaw v. Openshaw,* 42 P. 2d 191 (Utah 1935). In the latter case the court said in part: "The payments to the children themselves do not appear to have been made as payments upon alimony, but were rather the result of his fatherly interest in the welfare of those children. We do not believe he should be permitted to charge them to plaintiff. By so doing he would be determining for Mrs. Openshaw the manner in which she should expend her allowances. It is a very easy thing for children to say their mother will not give them money, especially as they may realize that such a plea is effective in attaining their ends. If she is not treating them right the courts are open to the father for redress." Here, the $2,149.33 disallowed by the chancellor represented remittances to the children themselves, including the automobile and television set, all labeled by the father as gifts, during a period of fifteen years. Their cost would average out at $36.00 per child per year, a rather meager display of paternal generosity. The credits amounting to $3,567.68, allowed by the chancellor, represented payments made to the children but received by Mrs. Futrell and applied to the maintenance of the children, as well as a small amount of clothing. This Court will not reverse a decision of a court of equity upon a finding of facts unless it is clearly erroneous. Maryland Rule 886 a. We think that the chancellor's findings here were amply supported by the evidence presented.

The second contention of Bradford is that the chancellor should have given consideration to the fact that the eldest son, Phillip, left the home of the appellee and resided with the appellant for one month, and then entered the armed services. Appellant cites authority from other jurisdictions to the effect that a father should be credited with sums expended while the children are in his custody for one reason or another. See, for example, *Earles v. Earles,* 99 N. E. 2d 359 (Ill. App. 1951); *State ex rel. Meins v. Superior Ct.,* 292 P. 1011 (Wash. 1930); *Schlom v. Schlom, supra.* Those cases are distinguishable on their facts. Cases may also be found reaching the opposite conclusion on their particular facts. For example, see *Bradley v. Fowler,* 192 P. 2d 969 (Wash. 1948); *Sampognaro v. Sampognaro,* 63 So. 2d 11 (La. 1953); *Finkbeiner v. Finkbeiner,* 288 S. W. 2d 586 (Ark. 1956). Whether the entering of a dependent child into the military service constitutes an emancipation falls under the general principle that whether emancipation has occurred in a given case is a factual question. *Wood v. Wood,* 63 A. 2d 586 (Conn. 1948); *Crosby v. Crosby,* 246 N. Y. Supp. 384 (1930); 15 *Washington and Lee Law Review* 298. It is plain from the record on all the facts that the court below did not see any justification for modifying the decree in favor of the husband. It in fact ordered that payments of $20.00 per week be continued despite the fact that Phillip had left his mother's home, the court basing this decision on the increased cost of living. There is no need to take judicial notice of the cost of living index to find this allowance for the care of three children a modest one. We find no error in this particular.

The next contention of the appellant is that the chancellor failed to give proper consideration to the military allotment accruing to the ex-wife as a result of claiming the children as dependents of their stepfather. As appellee has pointed out, the cases cited by appellant to support this contention are concerned with the situation where the estranged or divorced husband was in the armed forces, and the wife and children received allotments from the government because of his military status. In the instant case the wife has remarried and

her present husband is a serviceman. The marriage took place in September, 1946. Between that time and June, 1951, the only remittance of any kind sent by Bradford was a $100.00 check designated as a birthday gift to Phillip, in August, 1947. Among his excuses for not making payments, Bradford in his testimony referred to the fact that Mrs. Futrell was receiving an allotment. Now he seeks to claim a credit for part of these service payments on the basis that his children in effect helped determine the amount of them during the years and that this should relieve him of part of his obligation. He has cited no authority in support of the proposition that a husband should be credited for payments received by a former wife by reason of her present spouse's military service. Moreover, the appellant submitted no evidence to the chancellor showing the monetary value of that part of the allotment which might be allocable to any child or children of his, and thus failed to present any figure which could have served as the basis for a credit, even if the chancellor had been disposed to allow one. Common experience would lead to the conclusion that the sum of $20.00 per week never completely maintained the four, or even three, children, and the allotment merely would serve to take care of the deficit theretofore met over the years by Mrs. Futrell and her present husband. Remarriage of the wife is not a ground for modification of an award for the support of minor children. 27B, C.J.S., *Divorce*, § 322 (2) b.

We come now to the final question, whether appellee's claim for arrearages, or any portion thereof, is barred by limitations or laches.

Recent litigation between these parties was inaugurated when Mrs. Futrell on April 16, 1958, filed suit in the District Court of the United States for the District of Maryland against her former husband for accrued payments under the divorce decree. The jurisdiction of that court was based on diversity of citizenship, she being then, as now, a resident of Florida. The District Court decided it would not act on the complaint provided Bradford would file a petition in the original divorce action in Prince George's County to determine what amount, if any, was owed under the decree. Con-

sequently, on February 16, 1959, Bradford filed in the divorce action a "Petition for Modification of Divorce Decree" wherein he requested the court to determine his liability, if any, for the support of his minor children. It was from the chancellor's rulings on that petition that he took the appeal now before us. Under the equities of the situation we feel that April 16, 1958, when suit was filed in the federal court, should be the critical date with respect to the inquiry as to limitations.

We think that the question of limitations in this case is controlled by the case of *Marshall v. Marshall,* 164 Md. 107, 163 Atl. 874 (1933). There a decree was passed in conformity with an agreement of the parties, granting the wife a divorce, custody of two minor children, and providing that the husband pay fifty dollars per month to her for the support of herself and the children, until her death or remarriage, and upon the happening of either of those events, the defendant was to pay twenty-five dollars per month to each of the children until death or marriage. The husband met his obligation for several years, then left this state and made no further payments. Some 26 years later he became entitled to an interest in a personal estate in Baltimore City. The wife levied an attachment against this interest for accrued payments. On appeal, this Court said, with respect to limitations, at pages 114-115:

> "It is conceded that no sums which became payable under the decree more than twelve years before the filing of the petition for the enforcing process can be recovered, in view of the Code provision that no 'bill, testamentary, administration or other bond (except sheriffs' and constables' bonds), judgment, recognizance, statute merchant, or of the staple or other specialty whatsoever, except such as shall be taken for the use of the State, shall be good and pleadable, or admitted in evidence against any person in this State after the principal debtor and creditor have both been dead twelve years, or the debt or thing in action is above twelve years' standing.' Code, Art. 57, Sec. 3."

This Court again had occasion to review the question of limitations with respect to alimony in *Winkel v. Winkel,* 178 Md. 489, 15 A. 2d 914 (1940), involving an allowance to a wife in a separate maintenance proceeding. Reviewing the holding in *Marshall v. Marshall, supra,* Judge Parke, for the Court, said at page 506:

> "Another point decided [in *Marshall*] was that continuing periodical instalment payments of money under a decree were not barred by limitations as to those which had severally become due within the twelve years next preceding the proceedings for enforcement. The court did not hold that the agreed periodical payment must be paid if without the statute of limitations, but carefully confined the application of the statute to 'the amount of the unpaid instalments, and the existence of the conditions upon which its enforcement is dependent' as ascertained by an appropriate proceeding.
>
> "The rule of limitations stated in *Marshall v. Marshall, supra,* would seem to apply to the periodical instalments of alimony under a decree, to the extent that when such instalments separately became due the statute of limitations of twelve years began respectively to run severally as a bar to the enforcement of every such instalment, if it had accrued due and remained undischarged. In *Kalben v. King,* 166 Md. 632, 640, 172 A. 80, where alimony *pendente lite* was the subject matter, there is a *dictum* to that effect. In such event, the enforcement of the collection of the moneys due might continue to be by way of *scire facias,* attachment, execution or by other equitable remedies if within the period of limitations, * * *".

Appellee attempts to avoid the bar of limitations as to payments accrued for more than twelve years by pointing out that Code (1957), Art. 57, § 3, also provides that "every payment on the principal upon any *single bill or other specialty* shall suspend the operation of this section as to such

bill or specialty for three years after the date of such payment * * *." (Emphasis supplied.) This Court, however, does not consider support payments required by decree as comparable to a single bill or specialty. This conclusion is clearly implied in the *Marshall* case, *supra,* at p. 116, where we said that a support decree has the effect of "an adjudication of liabilities thereafter maturing at stated periods. Upon a proper petition and order such a decree may be enforced by execution or attachment as to all unpaid installments which may have become due within the preceding twelve years". Furthermore, as will be noted in the quotation above from the *Winkel* case, *supra,* this Court expressly held that the twelve year period of limitations begins to run severally as a bar to the enforcement of every such installment. In addition, we have stated, in considering the problem of full faith and credit as related to support payments, that "where a decree is passed for alimony payable in future installments the right to each installment becoming due is absolute and vested * * *." *McCabe v. McCabe,* 210 Md. 308, 123 A. 2d 447 (1956). That case also reiterated the proposition that under the 1950 amendment of Art. III, § 38, Constitution of Maryland, the obligation of support of a minor child under a decree would, like alimony, be considered a duty and not a debt. Thus, while Maryland does not follow the rule of some states that each installment for support becomes, when due, a final judgment on which execution may issue (see 11 Md. Law Review 251, for a discussion of the subject), our view as to the nature of support payments is in harmony with the approach to limitations that prevails in most jurisdictions, that the statute of limitations begins to run against each installment of support payments from the date on which it accrues. *Marshall v. Marshall, supra; Winkel v. Winkel, supra;* see dictum in *Kalben v. King,* 166 Md. 632, 172 Atl. 80 (1934); 137 A.L.R. 890; 70 A.L.R. 2d 1258. It follows that payment of one installment would not suspend the statute as to prior installments. However, it should be noted that the *Marshall* case, *supra,* held that the *original decree* providing for support of wife and children is not itself barred by the twelve year period of limitations applicable to judgments and decrees under Art. 26, § 20, now Maryland Rule 622 a.

As to that part of Mrs. Futrell's claim not barred by limitations, we find no error in the refusal of the chancellor to apply the doctrine of laches. As was said in *Lipsitz v. Parr,* 164 Md. 222, 164 Atl. 743 (1933), laches is an inexcusable delay, without necessary reference to duration, in the assertion of a right, and, unless mounting to the statutory period of limitations, mere delay is not sufficient to constitute laches, if the delay has not worked a disadvantage to another. On the facts of this case, with the wife forced to leave the state by reason of the actions of the appellant, according to her testimony, and to care for four children alone until her remarriage, together with the fact that the remarriage was to a serviceman, thus involving further travel, her delay in applying to the court for redress would appear excusable. We fail to discern how the delay has worked any disadvantage to the ex-husband. *Bradley v. Cornwall,* 203 Md. 28, 98 A. 2d 280 (1953). We find no abuse of discretion on the part of the lower court in rejecting the defense of laches as to that part of Mrs. Futrell's claim not barred by limitations.

From what has been said, it follows that the chancellor should have taken into account, in computing arrearages, only those installments which accrued within twelve years prior to April 16, 1958, when Mrs. Futrell filed suit in the District Court. Stated conversely, he should have disallowed payments which came due before April 16, 1946. Since the record shows that no payments were made by appellant between November 4, 1945, and April 16, 1946, it follows that an amount representing installments of $20.00 for 23 weeks— a total sum of $460—was erroneously included in the decree below. Therefore a decree will be entered for $12,412.32, with interest from August 1, 1960. Rule 875 a.

> *Decree reversed in part and affirmed as to the remainder in the amount of $12,412.32, with interest from August 1, 1960; costs to be paid by appellant.*