Laura Heimberg **WEINSTEIN**, Appellee,

v.

Murray **HEIMBERG**, Appellant.

Court of Appeals of Tennessee,
Middle Section.

Feb. 25, 1972.

Certiorari Denied by Supreme Court
Nov. 6, 1972.

W. A. Moody, Philip M. Carden, Nashville, for appellant.

Rutherford, Crockett & Guenther, Nashville, for appellee.

## OPINION

SHRIVER, Judge.

### THE CASE

This is an appeal in a divorce case from a decree adjudging appellant, Murray

Heimberg, to be in contempt of Court and wherein he was sentenced to five weekends in the Metropolitan Jail.

There is also an appeal from an order dismissing appellant's petition to reduce child support, the two appeals being consolidated by order of May 12, 1971.

Inasmuch as the decree denying petitioner a new trial specifically declined to stay the jail sentence for contempt, it was necessary for appellant to petition this Court for certiorari and supersedeas, which petition was granted and an order entered staying the sentence for contempt pending a hearing of the cause on appeal.

Counsel for appellant, in his Statement of the Case, says:

"This is hopefully the last round in a very protracted and confused child support litigation between a mother and father who are both college faculty members earning more than average incomes."

The parties were originally divorced by final decree in the Fourth Circuit Court of Davidson County on June 16, 1961, in which decree the custody of the two minor sons of the parties, Richard Gordon Heimberg and Steven Andrew Heimberg, was awarded the complainant wife with visitation privileges to the defendant husband. The decree provided $300.00 a month to be paid by the husband to the wife "until such time as the wife receives a Ph.D. degree, or until June 1, 1963, whichever is sooner, and, thereafter, the husband shall pay to the wife for the support and maintenance of said sons $200.00 each month and, if practicable, shall pay an additional $100.00 each month for the education of said sons, or shall pay said sum of $100.00 each month into a fund to be applied toward the future education of said sons, and the husband shall pay to the wife as monthly alimony the sum of $100.00 each moth."

The decree also ordered the husband to convey to the wife all of his right, title and interest in the home of the parties at

2814 White Oak Drive, Nashville, Tennessee, and all of the husband's title and interest in the furniture, fixtures and household effects located in said home.

The final paragraph in said decree is as follows:

"10. This agreement is intended as a complete and full settlement and release of any and all property rights between the parties, including all rights of alimony, dower and curtesy, and rights in property which the parties now own or may hereafter acquire."

As far as the record now shows, the parties fully performed said decree until June 1, 1963, at which time it was understood that the child support payments would be revised or changed and, on that date, the wife remarried.

It appears that the father remarried in 1964, acquiring, in addition to a new wife, two minor stepsons.

At this juncture the mother petitioned for an increase in child support and the father filed a cross-petition seeking a reduction in payments. After a hearing the Court entered an order increasing the child support payments to $120.00 per month for each child and showing that the alimony payments were terminated as of June 1, 1963.

It appears that this last decree was substantially complied with until the Summer of 1968, when the older boy was about to enroll in Vanderbilt University where his father was a member of the faculty. At this point the mother again petitioned for an increase in child support, whereupon, an order was entered providing that the father should pay all of the expenses connected with his son's education at Vanderbilt, up to an amount not in excess of $1,200.00 per year, and the mother's attorney was awarded a fee of $100.00.

Subsequently, during the school year a dispute arose about the payments under this order, whereupon, the Court entered a further decree awarding a judgment for $1,200.00 in favor of the mother for the son's education expenses at Vanderbilt for the year 1968–69, plus a fee of $250.00 for the mother's attorney.

This series of orders resulted in an appeal to the Court of Appeals where, after a hearing, an opinion and decree was entered on June 26, 1970, in which opinion it is recited that the single assignment of error was:

"It was error for the Trial Court to order the defendant to pay for a college education of a son under Section 36–828, T.C.A."

The assignment was overruled and the judgment of the Trial Court affirmed.

It appears that, without the consent of the father, the older son left Vanderbilt University where cost of his tuition and books was less than $300.00, because of the discount allowed him as the son of a faculty member. He entered the University of Tennessee with a resultant increase in tuition and expenses of about $1,800.00.

In December, 1970, the father petitioned for a reduction in child support and the mother filed a cross-petition asking for an increase, and also petitioning the Court to cite the father for contempt for failure to abide by the orders of the Court. The son's deposition was taken and filed and, after a hearing, the Court entered a Memorandum Opinion holding that payments made directly to the son totaling $960.00 constituted gratuities and that, therefore, the father was not entitled to credit for those payments as against the payments ordered by the Court for the son's maintenance and education. This was decreed by the Court in spite of the fact that it appeared that the son had requested these payments in order to meet his obligations at the University and were, therefore, used for the purposes intended by the Court in the first place. The Court further held that child support payments for both of the sons should be increased to a total of

$430.00 per month and the mother's attorney was awarded a fee of $50.00. The decree also provided that the payments for the support of the sons should be made to the Clerk of the Court.

On February 8, 1971, the father again petitioned for a reduction of child support and, again, the mother filed a cross-petition for an increase and for a citation of the husband for contempt. The father demanded a jury to hear the contempt charges but no jury was ever impanelled for this purpose. The case was heard on May 12, 1971 on oral testimony of the father and mother, together with certain stipulations and exhibits, along with the deposition of the older son, and The Court then ruled from the Bench as follows:

"THE COURT: I find Dr. Heimberg guilty of contempt of Court, and on the following grounds, since you're on the record.

First of all, he has paid $325.00 to his mother. I'm pleased he thinks that much of his mother, and I'm happy, but child support comes first and I have to enforce that first. That money was available to him and he did not pay it on child support. He's in contempt of Court on that charge.

He also testified he had a hundred dollars in a savings account that he has access to, which is available to him. He's guilty of contempt on that charge.

He also refuses to pay through the Clerk's Office, and I sentence him the next five weekends in the Metropolitan Jail, commencing at 4:00 p.m. Friday, the 14th, and released Sunday, the 16th, at 8:00 p.m., and to go back for the next four succeeding weekends."

Counsel for Mr. Heimberg noted an exception and prayed an appeal, which was denied. Also, application of the defendant for the entry of an order staying the jail sentence pending appeal was denied and a decree implementing the foregoing ruling of the Court was entered.

On petition of the defendant addressed to this Court, a writ of supersedeas was granted on May 20, 1971 and, thereafter, on June 4, 1971, the Trial Judge entered a memorandum that the father's petition for a reduction of child support be dismissed and an appeal from the petition of the father for a reduction of child support was granted and, as stated hereinabove, that appeal was consolidated with the appeal from the decree holding defendant in contempt.

## ASSIGNMENTS OF ERROR

There are thirteen assignments which we will discuss in the order in which they appear in the Assignments and Brief of appellant.

The first assignment charges error in holding that the father's payments made to the boy, then nineteen years old and attending college at the University of Tennessee, constituted a gratuity for which the father is not entitled to credit on his child support payments.

It is said that this is error because it went beyond the prayers of the pleadings and constituted punishment and a taking of the father's property without due process of law in violation of the Constitution.

We are impressed that, regardless of the question whether this action of the Trial Judge constituted reversible error, it was a harsh and improper judgment.

In the first place, the question whether the father was legally liable for his son's college education is the subject of divided opinion in the various jurisdictions of the country. However, as noted hereinabove, we affirmed the decree of the Trial Court in which appellant was ordered to pay his son's tuition and expenses in college. Nevertheless, when considered in the light of the fact that the son, without his father's consent, left Vanderbilt University and enrolled in the University of Tennessee at a considerable additional expense, together with the fact that the boy was

nineteen years of age and is shown to have used the money for the purpose for which it was decreed by the Court, we are of opinion that the father should be given credit for the payment of $960.00 as against the amount ordered to be paid by decree of the Court. It results that this assignment is sustained.

■ The second assignment complains that the child support payments were increased from $2,880.00 a year to $5,160.00 a year solely to correct difficulties in payment of educational expenses previously assessed at $1,200.00 a year for each son.

While we consider that the increased payments were quite burdensome to the father, we are not prepared to hold that the Trial Judge was in error in increasing the payments, hence, this assignment is overruled.

■ Assignment No. 3 asserts error in ordering that the child support payments be made through the office of the Clerk of the Court, since that entailed additional cost and expense.

There are valid reasons for the exercise of the Court's discretion in ordering child support payments made through the Clerk's Office and we find no merit in this assignment and it is, accordingly, overruled.

■ Assignment No. 4 asserts error for holding the father in contempt for nonpayment of fees allegedly owed to the mother's attorney in the amount of $750.00, and in adding a $50.00 attorney's fee as a further condition of purging himself of contempt.

We are of opinion that an order in this case allowing the wife's lawyers a fee of $750.00, when it was entered and became final, was a mere judgment that should have been enforced by execution if possible, and resort to the harsh remedy of punishment for contempt for failing to pay said judgment was not justified by the facts shown in the record.

Assignment No. 5 asserts that the Trial Court erred in putting the father to trial on charge of contempt on the cross-petition of the mother and without notice that the father's demand for a jury trial had been denied.

■ As was held in Pass v. State, 181 Tenn. 613, 184 S.W.2d 1, a defendant is not entitled to a jury trial in contempt proceedings at common law and we find no statute authorizing a jury trial in such case, hence, this assignment is overruled.

■ Assignment No. 6 asserts that the Trial Court erred in finding the appellant guilty of contempt of Court for paying $325.00 to his mother during the calendar year 1970.

Of course, it is true that defendant was not guilty of contempt of Court merely by reason of the fact that he paid $325.00, or any other reasonable amount, for the support of his aged mother. The Court asserted, however, that child support comes first and that since that money was available to him and he did not pay it on child support, he is in contempt of Court.

While it may be true that, technically, the defendant was in contempt for failing to make child support payments, we feel that it was an extremely harsh ruling to base the judgment for contempt on the grounds specified by the Trial Judge in his statement.

In any event, we are unwilling to predicate a jail sentence of the defendant on such a ground and the decree of the Trial Judge, accordingly, will be reversed in this respect.

■ Assignment No. 7 charges error in holding the defendant guilty of contempt of Court for having $100.00 in a bank in his present wife's name which he did not use for child support payments.

We fail to find satisfactory evidence in the record that this $100.00 was actually available to the defendant for use in pay-

ing child support. The source of this account is not shown. Apparently, it was in his wife's name and it may well be that she would have refused to allow him to draw it out, hence, this assignment is sustained.

Assignment No. 8 charges error in finding the appellant was in contempt for failure to make child support payments through the Clerk at an additional cost of $21.50. It is asserted that this was error because the statute authorizing payments to be made through the Clerk's Office provides its own exclusive method of enforcement under T.C.A. 36–820, which was not followed in this case.

For reasons stated hereinabove in dealing with Assignment No. 3, we overrule this assignment.

Assignment No. 9 states:

"The learned Trial Court erred and acted arbitrarily and without jurisdiction in sentencing the appellant to jail for criminal contempt of Court."

We do not find that the defendant was held to be guilty of criminal contempt of Court. This was a civil action and the contempt on which he was found guilty was a civil contempt. Chappell v. Chappell, 37 Tenn.App. 242, 261 S.W.2d 824. This assignment is overruled.

Assignment No. 10 states:

"The learned Trial Court acted erroneously, arbitrarily, capriciously and without jurisdiction in causing commitments to issue and in refusing to stay the same upon granting an appeal from the judgment of conviction for criminal contempt."

The questions raised by this assignment have become moot since supersedeas was issued as to the jail sentence and appeal perfected as to the other question.

Assignment No. 11 is as follows:

"The learned Trial Court erred in dismissing the appellant's petition for reduction of child support payments."

This assignment has to do with the facts shown by the record and the conclusions of the Trial Judge which come within his sound discretion, hence, it is overruled.

Assignment No. 12 is as follows:

"The Trial Court erred in basing the conviction in part upon evidence he was compelled to produce under the questioning of the Court itself."

This assignment is without merit and is overruled.

Assignment No. 13 is as follows:

"The learned Trial Court erred in pronouncing judgments unsupported by any evidence and against the preponderance of the evidence of May 12 and 18, and June 4, 1971."

This assignment requires consideration of the evidence in the case as to whether or not the defendant willfully disobeyed the orders of the Court and as to whether or not his child support payments were excessive and beyond his ability to pay. While we think the record generally reveals that the defendant undertook in good faith to comply with the orders of the Court, with the possible exception of his obstinate objection to payment through the Clerk's Office, nevertheless, for the most part, the decrees came within the jurisdiction and discretion of the Trial Judge in dealing with the amounts to be awarded for child support.

While we do not sustain this assignment, we think certain modifications of the decrees, in addition to those indicated hereinabove, are in order.

There is another question which presents itself and which must be dealt with in connection with this matter, to-wit, what is the effect of Chapter 162 of the Public

Acts of 1971 on the duties and responsibilities of these parties respecting support and education of the two sons?

Chapter 162 of the Public Acts of 1971 is as follows:

"BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. This Act shall be known as and may be cited as the 'Legal Responsibility Act of 1971'.

SECTION 2. Tennessee Code Annotated, Sections 23–1201, 28–107, 39–1003, 39–3706, and 57–123 is amended by deleting the word and number 'twenty-one (21)' wherever they appear in the sections and by substituting in lieu thereof the following word and number:

'eighteen (18)'

SECTION 3. Notwithstanding any laws to the contrary, any person who is eighteen (18) years of age or older shall have the same rights, duties and responsibilities as a person who is twenty-one (21) years of age or older.

SECTION 4. This Act shall take effect on becoming a law, the public welfare requiring it.

PASSED: May 4, 1971

APPROVED: May 11, 1971"

█ The record shows that Richard, the older of the two sons, was more than eighteen years of age at the time the above quoted statute went into effect on May 11, 1971, and that the younger of the two, Steven, reached the age of eighteen September ——, 1971. Thus, under the provisions of the statute that any person who is eighteen years of age or older shall have the same rights, duties and responsibilities as a person who is twenty-one years of age or older, we hold that Dr. Heimberg's *legal* duty to furnish maintenance, support and education for these two sons ceased as of the above dates, that is, the duty to support and educate Richard ceased on May 11, 1971, and his duty to support and educate Steven ceased on September ——, 1971. It should be observed that there is no showing whatever that either of these boys is incapacitated or incompetent, mentally or physically, and no other circumstance appears that would indicate any exception as to either of them with respect to the application of the foregoing statute.

In this connection, it is to be noted that in Churchill v. Churchill, 203 Tenn. 406, 313 S.W.2d 436, decided April 9, 1968, the Court held that where a divorce decree granted exclusive custody of two boys to the mother and a property settlement incorporated in the decree required the husband to pay $250.00 monthly for their support, the amount was properly reduced to $125.00 when one of the boys attained his majority. In this connection, the Court said:

"At the time the Court of Appeals decided the issue involved, the oldest son, William K., had reached his majority. No further monthly payment would be due as to him. But as to Ronald, the appellant would be required to pay $125 per month for several years, or until he reached twenty-one (21) years of age."

In considering the question of contempt and the Court's action in ordering that the defendant be confined in jail on five successive weekends as punishment, we call attention to the following authorities:

In Going v. Going, 148 Tenn. 522, 534–565, 256 S.W. 890, the Supreme Court, in an exhaustive Opinion written by Special Justice Thomas Malone, held, among other things, that a judgment for permanent alimony which has become final should not be enforced by attachment for contempt.

In dealing with the question, "Should this judgment for permanent alimony, being beyond the power of the Chancellor to alter, be enforced by contempt proceedings?", the Court reviewed decisions from

numerous jurisdictions across the country dealing with the question of contempt for failure to pay alimony or to make other payments in response to decrees of the Court.

Among other things, it is stated in the Opinion (548, 256 S.W. 897):

"We have analyzed these authorities to demonstrate that matters of divorce and alimony are largely regulated by statute in the various States of the Union, and that it is very difficult to lay down a broad and comprehensive rule on such matters, and say that it is supported by the weight of authority. . . . .

But we are unable to say that the weight of authority supports the proposition that after a decree becomes fixed and out of the control of the chancellor it may, at any subsequent term, be enforced by contempt proceedings, irrespective of the changed condition of the wife."

The Opinion states that another feature of the case is the fact that the husband, shortly after the divorce decree was obtained, remarried, and has now a wife and a minor stepchild to support, and while it is not claimed that he is spending his income in riotous living but is spending it on his present wife and child instead of paying it out as alimony to his former wife, and that, while it is true that it has been held in certain cases that support of another wife and family is not a defense for failure to pay alimony; "Certainly in view of the well-settled policy of the law to encourage marriage, it would seem unfortunate that the new family should be made the victims (as they inevitably must be) of a hard and fast rule that alimony awarded at a previous term must be paid, and that failure so to do is punishable by contempt proceedings, though this be done at the instance of the former wife, who does not need the alimony for her support."

At another point, the Court states:

"After a careful consideration of the various principles involved, and after reading many cases from other jurisdictions, we are of opinion that there should be a distinction made where alimony is payable in future installments, and is to be derived from the husband's labors, between those cases where the decree is flexible and under the control of the Court, and those cases, like the present, where it has become rigid."

At another point in the Opinion there is a quotation from an English case indicating that an attachment (of the person) was never issued by the Court to enforce an order for a money payment under a final decree, and a motion for such holding was dismissed.

The Opinion proceeds as follows:

"In some States of the Union it has been held that alimony is merely a debt which cannot be enforced by contempt proceedings. In re Kinsolving (1908), 135 Mo.App. 631, 116 S.W. 1068; Coughlin v. Ehlert, 39 Mo. 285; Segear v. Segear, 23 Neb. 306, 36 N.W. 536; Leeder v. State, 55 Neb. 133, 75 N.W. 541. And see Marsh v. Marsh (1903), 162 Ind. 210, 212, 70 N.E. 154; Allen v. Allen (1887), 72 Iowa 502, 34 N.W. 303 (temporary alimony); Baily v. Baily (1886) 69 Iowa 77, 28 N.W. 443 (temporary alimony); North v. North (1878), 39 Mich. 67."

However, it is pointed out that, in a majority of the States, alimony as such, is not regarded as a mere debt and where the decree has not become final, payment may be enforced by proceedings in contempt, but that the actions of the Courts in several jurisdictions upholding the power to attach for contempt for failure to pay is dependent upon the statutes or the Constitution of that particular State.

The Opinion in Going v. Going, supra concludes as follows:

"We do not mean to decide that the chancery court cannot, under other conditions, enforce the payment of alimony by attachment for contempt, for this

question is not before the court, but we think that under the facts and circumstances shown by the record in this case attachment for contempt is not a proper remedy, and that the appellee must enforce her claim for alimony by other appropriate proceedings.

.　　.　　.　　.　　.　　.

It results that the chancellor's decree and that of the Court of Civil Appeals will be reversed, the attachment and mittimus quashed, and the case remanded for further proceedings not inconsistent with this opinion."

Sullivan v. Sullivan, 23 Tenn.App. 644, 137 S.W.2d 306, defines civil contempt as one where a person refuses or fails to comply with an order of a Court in a civil case, and punishment is meted out at the instance and for the benefit of a party litigant. The Court in said case held that, in a contempt proceeding for failure to pay alimony in accordance with a divorce decree, the action of the Trial Court in committing the defendant to jail for ten days was erroneous and that a proper procedure, upon finding the defendant guilty and subject to imprisonment, would have been to sentence defendant to imprisonment until the specified amount of the judgment and costs were paid. In the opinion in said case the Court quotes from a decision of the Supreme Court of Tennessee as follows:

"The question of contempt for failure to pay alimony is elaborately discussed in an able opinion in the case of Clark v. Clark, 152 Tenn. 431, 440, 278 S.W. 65, 67, in which the Supreme Court said: 'The rule is based upon the ground that the refusal is willful disobedience, and where a party is guilty of willful disobedience or obstinacy to an order of the Court or Judge, the Court or Judge is empowered to punish for contempt and sentence him to imprisonment until the specified sum and costs are paid." [citing cases]

It is pointed out in Brown v. Brown, 156 Tenn. 619, 4 S.W.2d 345, that the power of the Court, granting a divorce, to award alimony to the wife, and to enforce such an award, is regulated by statute.

And in Thones v. Thones, 185 Tenn. 124, 203 S.W.2d 597, it was announced that the public policy of Tennessee is to punish by contempt husbands who, through willful disobedience or obstinacy, refuse to comply with a Court order to pay alimony, citing numerous cases from several jurisdictions, including cases involving support payments for minor children of the parties. See Toncray v. Toncray, 123 Tenn. 476, 131 S.W. 977.

In Cannon v. Cannon, 34 Tenn.App. 568, 241 S.W.2d 435, the Court again announced the proposition that contempt proceedings for failure to pay alimony in accordance with a divorce decree is a civil proceeding, and the Court has no authority to commit the defendant to jail for any definite time, but can only commit defendant for indeterminate sentence until the amount of alimony in arrears is paid.

■■ We are of opinion that orders of the Court with respect to support payments for minor children comes in this same category, so that the decree of the Trial Judge in the instant case ordering defendant committed to jail for five successive weekends is contrary to the holdings of our Courts in the above cited cases.

It results that the judgment of the Trial Court committing the defendant to jail is reversed, Assignments Nos. 1, 6 and 7 are sustained, the judgment as to those questions wherein the decree is not reversed is modified so as to give credit to the defendant-appellant against the amounts by which he is adjudged to be delinquent in his payments representing the amount he paid directly to his son who was attending the University of Tennessee, and, further, providing that his legal obligation to maintain, support and educate his two sons terminated under the provisions of Chapter 162,

Acts of 1971, as hereinabove set forth, as of May 11, 1971 for Richard, and September —, 1971, for Steven.

The cause is remanded to the Trial Court for the implementation of the decree of that Court, as modified by the Opinion and decree of this Court, and for enforcement in conformity with this Opinion.

Reversed in part, modified in part, and remanded.

PURYEAR and TODD, JJ., concur.