IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 19, 2007

**GRETA DENISE SMITH (AUSTIN) v. RICKY ALLAN SMITH**

**An Appeal from the Chancery Court for Hardin County**
**No. 5658     Donald P. Harris, Sr. Judge, Sitting by Designation**

_____

**No. W2006-02448-COA-R3-CV - October 3, 2007**

_____

This appeal involves a petition for past due child support. When the parties divorced in 1993, the mother was designated as the primary residential parent of the child, and the father was ordered to pay child support "directly to" the mother. In 1998, the mother remarried. From that point forward, the father made his child support checks payable to the child, not to the mother. Nevertheless, the mother endorsed the checks, deposited them into the same bank account as she had before, and maintained control over the use of the funds. Years later, in 2005, the father filed a petition to modify custody, seeking to be designated as primary residential parent. The mother filed a counterclaim for child support arrearages, claiming that the father had not made proper payments as required under the divorce decree since 1998, and that he should not receive credit for the child support checks that were made payable to the child. After a hearing, the trial court gave the father credit for the child support checks. The trial court reasoned that, although the checks were made payable to the child, the money remained in the mother's control and she treated it as her own. The mother now appeals. We affirm, concluding that the father should receive credit for the disputed payments under the circumstances presented.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Terry L. Wood, Corinth, Mississippi, for the appellant, Greta Smith Austin.

Lloyd R. Tatum, Henderson, Tennessee, for the appellee, Ricky Allan Smith.

**OPINION**

Plaintiff/Appellant Greta Denise Smith (Austin) ("Mother") and Defendant/Appellee Ricky Allan Smith ("Father") were divorced on September 14, 1993. The parties had one child during the marriage, Garrick Allan Smith ("Garrick"), born February 2, 1991. When they divorced, the parties signed a Marital Dissolution Agreement ("MDA") designating Mother as the child's primary

residential parent and requiring Father to "pay directly to [Mother] the sum of Eighty Dollars ($80.00) per week as Child Support . . . ." For several years, Father regularly paid the required child support directly to Mother as ordered.[1]

In November 1998, Mother remarried. Thereafter, Father continued sending the child support checks, but instead of making the checks payable to Mother, he began making the checks payable to Garrick. Father continued this manner of payment for over six years.

On February 22, 2005, Father filed a motion to modify the trial court's previous orders, seeking to be designated Garrick's primary residential parent. If he were designated primary residential parent, Father also sought to modify his child support payments accordingly. Mother responded by filing a counterclaim for child support arrearages, claiming that Father should not receive credit for the payments made directly to the minor child in contravention of the MDA and Tennessee law. The parties entered into a settlement and compromise on the issues raised in Father's motion to modify, but Mother's counterclaim remained at issue.

On August 28, 2006, the trial court held a hearing on Mother's counterclaim for the child support arrearage. At the hearing, the trial court heard testimony from both Mother and Father regarding the payments that Father made directly to Garrick. Mother first described her practice when Father's checks were made payable to her, as required under the divorce decree. She said that, prior to her remarriage, when she received Father's child support checks, she deposited the payments into a bank account established in the names of both her and Garrick. Though the account was in both names, Mother exercised control over it. The funds in the account were used for the child's necessary expenses, medical and otherwise. In November 1998, Mother remarried. After that, Father sent the same amount of child support each month, but he made the checks payable to Garrick, rather than to Mother.[2] Father did not discuss with Mother this change in his manner of payment prior to implementing it. He later told Mother that he began making the checks payable to Garrick because he did not want her new husband to have access to the money. Mother testified that Father "continuously tried to tell me that it was his money, it was not mine and he wanted to tell me how to spend it." She told Father, however, that the money was to be used for Garrick, and that he, Father, had no control over how it was used. Mother indicated that Father had a temper, and that at times she was afraid to confront him.

Mother admitted that, even after Father began making the support checks payable to Garrick, she continued to receive all of the checks. She endorsed them as before, and she deposited them in

---

[1] Father paid Mother $347 per month in support, even though the child allegedly resided with him 50% to 60% of the time.

[2] On the advice of counsel, in March 2005, Father again began making the support checks payable to Mother.

the same bank account as before.[3] She assumed that Father intended them as support checks for Garrick. Mother claimed that, after Father began making the child support checks payable to Garrick, she discontinued paying for most of Garrick's necessities out of the joint bank account. Instead, she decided to treat the majority of the payments as a gift to Garrick. After depositing the checks in the joint account, Mother used the monies in the account for things that Garrick wanted, such as electronic items, musical instruments, and the like, rather than for necessities. She claimed that she thereafter used her own personal funds for Garrick's necessities, such as his clothes and his lunch money, and estimated that she had spent about $25,000 on those types of items. She said that, of the $26,247 that had been deposited into Garrick's account since Father began making the checks payable directly to him, approximately $5,000 had been spent on necessities, and approximately $8,000 to $9,000 remained in the account. She sought past due child support from Father in the amount of $26,247 minus the $5,000 used for necessities and the amount remaining in the account. Mother planned to use the proceeds remaining in the joint account for Garrick's college expenses. She acknowledged that, at all times, she maintained control over the disposition of the funds in the joint account.

Father testified as well. He stated that the child support checks made payable to Garrick were intended to satisfy his child support obligation. Father said he changed the payee on the child support checks to Garrick after Mother remarried because "[t]hat money was to be spent for [Garrick's] child support, not . . . for [Mother and her new husband] to take vacations [or] . . . for the night life." He suspected that Mother was using the child support proceeds for recreation for her and her new husband because Mother would hold three or four checks and then deposit them just before she and her husband went on extended, week-long trips. Father said he did not remember that the divorce decree had required him to make the child support payments directly to Mother. He claimed that he had told Mother that the checks made payable to Garrick were for child support, and that Garrick knew that the checks were child support payments. Father said he never threatened Mother or tried to tell her how to use the child support money.

At the conclusion of the hearing, the trial court found that the support checks made payable to Garrick satisfied Father's obligation under the operative child support order, and that, therefore, Father was not in arrears in his child support payments. The trial court reasoned:

> In this case, [Mother] received the money that was to be child support. As I understand it, she endorsed every check with her name, she put it in an account, she controlled how it was used, how it was spent and I don't think that I have any choice but to consider it to be child support and that in satisfaction of this child support obligation. The fact that she can't account for it indicates that she was treating it really as her money and not as Garrick's.

---

[3]Mother acknowledged that, although she changed banks at some point to earn a higher interest rate, the account in which she deposited all of the checks remained the same, and it remained in the names of both Garrick and Mother.

The trial court noted that Father's attempt to control the use of the money paid to Mother was inappropriate, commenting that Mother is permitted to use the child support payments in any way that she sees fit. "[I]f [Mother and her husband] want to go on trips or . . . whatever they want to do, that's her business as long as she provides . . . for the [child's] necessities . . . ." On October 12, 2006, the trial court entered an order consistent with its oral ruling. On March 26, 2006, the order was made final and appealable. From that order, Mother now appeals.

We review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *see Beard v. Beard*, 206 S.W.3d 463, 466 (Tenn. Ct. App. 2006). The trial court's conclusions of law are reviewed *de novo*, without a presumption of correctness. *Beard*, 206 S.W.3d at 466.

Mother argues that, under Tennessee law, voluntary payments made on behalf of minor children that do not comply with the operative child support order may not be credited as child support payments unless the payments are made "for the children's necessaries which are not being supplied by the custodial parent." *See Oliver v. Oczkowicz*, No. 89-396-II, 1990 WL 64534, at *2 (Tenn. Ct. App. May 18, 1990); *see also Brownyard v. Brownyard*, No. 02A01-9803-CH-00063, 1999 WL 418352, at *15 (Tenn. Ct. App. June 22, 1999) (refusing to give credit for payments made to and on behalf of the children in the absence of evidence showing that the primary residential parent was not providing necessaries for the children); *Sutton v. Sutton*, No. 180, 1991 WL 16234, at *1 (Tenn. Ct. App. Feb. 12, 1991) (permitting credit for necessaries provided to the child during the one year that the child lived with the obligor parent); *Netherton v. Netherton*, No. 01-A-01-9208-PB00323, 1993 WL 49556, at *2 (Tenn. Ct. App. Feb. 26, 1993) (permitting credit for necessaries provided to the child while in the obligor's custody). She points out that Father produced no evidence that the proceeds of the checks made payable to Garrick were for necessaries that were not being provided by Mother, nor did Father even make an allegation that Mother failed to provide such necessaries. In absence of such a showing, Mother argues, Father may not receive credit for the payments made directly to Garrick, and the trial court's decision must be reversed.

Father argues that giving him credit for the checks made payable to Garrick was proper in this case. In support of his argument, Father cites *Weinstein v. Heimburg*, 490 S.W.2d 692 (Tenn. Ct. App. 1972). In that case, the operative child support order required the father to pay for his minor child's college tuition and expenses. The child changed colleges without his father's consent, which resulted in an increase in annual tuition and expenses of about $1,800. *Weinstein*, 490 S.W.2d at 694. Thereafter, the father made several payments directly to the child totaling $960, and the child used the money for his college expenses. When the mother sought to have the father held in contempt based on a child support arrearage, the father sought credit for the $960 that he paid directly to the child. The trial court disallowed the credit, holding that the monies paid to the child constituted a gift. *Id.* The appellate court reversed, based in part on the fact that the money was used for the purpose originally intended by the trial court. *Id.* at 695-96. Citing *Weinstein*, Father argues in this case that he was properly given credit for his payments made directly to Garrick, because the money was used for the purpose for which it was intended – Garrick's support.

The pertinent Tennessee statute provides:

> The [child support] order or decree of the court may provide that the payments for the support of such child or children shall be paid either to the clerk of the court or directly to the spouse, or other person awarded the custody of the child or children.
> . . .

Tenn. Code Ann. § 36-5-101(c)(2)(A) (2005). In accordance with this statute, the parties' 1993 MDA, incorporated into the divorce decree, provides that Father is to "pay directly to [Mother] the sum of Eighty Dollars ($80.00) per week as Child Support . . . ." It is undisputed that, from the end of 1998 to March 2005, Father sent timely checks in the requisite amount made payable to the parties' son instead of to Mother. These checks were sent to the home Garrick shared with Mother, and the checks were given to Mother and endorsed by her. They were then deposited into a bank account under Mother's control and the monies were used as Mother deemed fit. Both parties were aware that Mother continued to receive Father's checks and to control how the proceeds of those checks were spent.

The facts in this case are distinguishable from the facts in the cases cited by the parties. In ***Oliver v. Ozkowicz***, ***supra***, cited by Mother, the obligor father had made various payments for child-related expenses, apparently made directly to the ultimate payee, such as payments for private school tuition, medical bills, and a boy scout uniform. The ***Oliver*** court held:

> [W]e think the better rule is to allow a credit for voluntary payments made on behalf of the children only where the payment is for the children's necessaries which are not being supplied by the custodial parent. This result is in line with what is apparently the majority view, *see* 24 Am. Jur.2d *Divorce and Separation* § 1077, which disallows credits for payments not made in accordance with the support order, and it recognizes that equitable considerations may allow credits under certain circumstances. *Id.*
>
> * * *
>
> Applying the rules we have outlined above, we do not think the respondent is entitled to any credit for the items contested by the [father]. There is no evidence in the record before us from which we can conclude that the payments claimed by the father were for necessaries which the custodial parent failed or refused to furnish.

*Id.* at \*2-\*3. Thus, where the obligor parent made payments directly to the purveyors of the services on the child's behalf, credit for these payments was disallowed in the absence of proof that the primary residential parent was not furnishing necessaries. This is distinguishable from the instant case, where Mother received the funds and exercised control over them.

Similarly, in ***Brownyard, supra***, also cited by Mother, the father's child support obligation increased and the parties had agreed to split the children's college expenses. *Id.* at \*2-\*3. The father

made several payments directly to the college-age children, furnished them used automobiles, and directly paid a variety of college-related expenses. The appellate court declined to credit the father for the payments made directly to the parties' adult son, noting that there was no evidence in the record that the checks were for necessities that were not provided by the mother. *Id.* at *15. Despite the record containing documentation of various college-related expenses paid by the father, he did not provide the court with the total college expenses for the children, and therefore could not show that he had paid half of them. Consequently, the appellate court affirmed the trial court's order requiring the father to pay half of the student loan. *Id.* at *16. Thus, in **Brownyard**, the obligor parent's payments were made directly to the child or to the party furnishing services to the child, and the obligee parent was deprived of her right to exercise control over the funds.

We noted above the circumstances in **Weinstein**, cited by Father, where the obligor father was ordered to pay his son's college expenses. The father paid money directly to the adult son, and the monies were in fact used to pay college expenses. In **Weinstein**, then, the payments at issue were not child support payments for the support of a minor child, and so the facts are distinguishable from the case at bar.

The parties have not cited a Tennessee case directly on point on the issue in this appeal, namely, whether an obligor parent may be credited with child support payments made in the form of checks made payable to the child under circumstances in which the obligee parent receives the checks, endorses them, deposits them, and exercises control over the proceeds. We recognize that, to date, the only appellate cases in Tennessee that have allowed a credit for payments made directly to the child have required a showing that the payments were made "for the children's necessaries which are not being supplied by the custodial parent." **Brownyard**, 1999 WL 418352, at *15 (internal quotations omitted). It is undisputed that there is no such showing in this case, and Father does not allege that Mother is not providing necessaries for Garrick. Rather, he argues that such a showing is not required under these circumstances. Because of the unique circumstances presented in this case, we review cases from other jurisdictions that involve similar circumstances to determine whether Father should be credited for the payments made directly to Garrick.[4]

In general, an obligor parent is not given credit for child support payments made in a manner other than that specified in the operative child support order. This for two reasons. First, to do so could be construed as a retroactive modification of a child support order, prohibited in most jurisdictions. **See generally** Alice Wright Cain, J.D., *Right to Credit on Child-Support Arrearages for Money Given Directly to Child*, 119 A.L.R.5th 445, at *2 (2004). Second, permitting such credit could have the effect of giving control over the use of the funds to the obligor parent, thus interfering with the custodial parent's duty and right to disburse the funds as he or she deems necessary:

---

[4] We exclude cases from jurisdictions in which there is a state statute that resolves the issue in this appeal, because Tennessee has no such statute. **See, e.g., In re Marriage of Krauth**, No. 00-0359, 2001 WL 487371, at *1-*2 (Iowa Ct. App. 2001) (relying on statute requiring that payments be made to clerk of the court or the collection services center); **Monicken v. Monicken**, 593 N.W.2d 509, 514-15 (Wis. Ct. App. 1999) (relying on statute which allows credit for direct contributions to the child where "the payer proves by clear and convincing evidence . . . that the payee expressly agreed to accept the payments in lieu of child . . . support").

Courts generally do not allow a credit to the obligor spouse for voluntary expenditures made on behalf of a child in a manner other than that specified by a decree. To permit such a credit would effectively permit the obligor parent to vary the terms of the decree and to usurp from the custodial parent the right to determine the manner in which support money should be spent and could allow the obligor effectively to curtail payments to the custodial parent at the whim of the obligor. Additionally, when an obligor makes extra payments on behalf of his or her children, a court can view those payments as being made under his or her common-law duty to support the children, and although child support orders under the statute may be viewed as the court-enforced fulfillment of this obligation, the voluntary payments made in fulfillment of this obligation are not necessarily to be offset against a statutory obligation enforced by a court order. Thus, a court will deny an obligor a credit for any voluntary payments for travel expenses, automobiles purchased for a child, tuition or educational expenses, clothing, gifts, food, or entertainment. The obligor is also not entitled to a credit for payments if the obligor makes those payments to third parties for the children's benefit or to the child directly, even if such payments equal the amount due the obligee, or if the obligor makes the payments under the mistaken belief that the payments are required after the child reaches majority.

24A AM. JUR. 2D *DIVORCE AND SEPARATION* § 1067 (1998) (footnotes omitted), *cited in* **Oliver**, 1990 WL 64534, at *2. Even so, courts faced with this issue often recognize that "situations may arise in which equitable considerations merit giving an obligor spouse a credit against support payments for voluntary expenditures made on behalf of [or directly to] a minor child." **Id.** § 1068; *see* Cain, *supra*, at § 8.

Courts addressing whether an obligor should get credit for payments made directly to the children have taken one of two approaches. Under the first, more liberal approach, trial courts are permitted to exercise their discretion on a case-by-case basis to determine whether an obligor parent should be given credit against his child support obligation for payments made directly to the children. **Stinson v. Carter**, 543 So. 2d 1198, 1200 (Ala. Civ. App. 1989) (holding that whether to credit for payments to the child is within the sound discretion of the trial court, and "[a]lthough a trial court may, under certain circumstances, allow a father credit against child support arrearages, it is under no compulsion to do so"); **McCrady v. Mahon**, 400 A.2d 1173, 1174 (N.H. 1979) (holding that whether to allow credit for payments to the child is within the discretion of the trial court, and the trial court should allow such credit "under special circumstances where equitable considerations warrant such an allowance"). In exercising its discretion, courts may weigh all equitable considerations, such as whether allowing credit works an injustice to the obligee parent or whether to hold otherwise would unjustly enrich the obligee parent. *See Tescher v. Tescher*, 491 P.2d 82, 84 (Colo. Ct. App. 1971); **Johnston v. Parham**, 758 So. 2d 443, 445-46 (Miss. Ct. App. 2000); *see also Goodson v. Goodson*, 231 S.E.2d 178, 182 (N.C. Ct. App. 1977) (listing factors to

consider, but stating that "controlling principle is that credit is appropriate only when an injustice would exist if credit were not given,");[5] Cain, *supra*, at § 8.

Under the second, more conservative approach, the obligor parent is given credit for payments made directly to the child only under specific circumstances that would result in an injustice if credit were not given. One specific circumstance is where the parties have agreed or consented to this manner of payment. *See, e.g., Bendix v. Bendix*, 550 N.E.2d 825, 826 (Ind. Ct. App. 1990) (noting rule that credit for payments not conforming to the child support order is allowable when the parties have agreed to an alternate method of payment); *Dunn v. Dunn*, 546 So. 2d 819, 827 (La. Ct. App. 1989) (refusing to give the father credit for payments made directly to the child, but allowing credit for payments made to the child's school at the mother's request); *Guri v. Guri*, 448 A.2d 370, 372 (N.H. 1982) (noting that obligor parent is allowed credit for payment to child when obligee parent consents to such payments). These courts recognize that the custodial parent should have unfettered discretion over how to use child support proceeds, and the obligor parent should not be able to inhibit the exercise of that discretion unilaterally. However, the custodial parent is prevented from objecting if he or she has entered into an agreement with the obligor for payments to be made directly to the child or in a manner contrary to the child support order. *See Guri*, 448 A.2d at 372.

Another specific circumstance in which the obligor parent has generally been given credit against his child support obligation is where, even though the payment is made to the child, the custodial parent actually receives the money and has control of the funds. *Cotton v. Wright*, 190 So. 665, 670-71 (La. 1939); *Bradford v. Futrell*, 171 A.2d 493, 497 (Md. Ct. App. 1961); *Aubry v. Aubry*, No. H-86-22, 1987 WL 11241, at *2 (Ohio Ct. App. May 22, 1987). Conversely, such credit has not been allowed when the money paid to the child is not accessible by the custodial parent, and the child maintains control over the funds. *See, e.g., Bendix*, 550 N.E.2d at 826-27 (refusing to give credit for payments made to children payments tendered directly to the children because this permits the obligor "to usurp the right of the custodial parent under the support order to determine the manner in which support payments should be spent"); *Transylvania County Dep't of Soc. Servs. ex rel. Dowling v. Connolly*, 443 S.E.2d 892, 895-96 (N.C. Ct. App. 1994) (under Georgia law, refusing to give credit for checks sent to the child when the custodial parent did not have access to the funds and the child used the money to buy "Nintendo games and things of that nature"). These courts recognize that the custodial parent has the privilege and responsibility of dictating how child support funds should be used. Unless the custodial parent receives the money and is in control of how it is disbursed, then giving the obligor parent credit toward his child support obligation for monies given directly to the child interferes with this right. *See Cotton*, 190 So. 2d at 670; *Bradford*, 171 A.2d at 496.

We believe that the second, more conservative approach is more consonant with existing Tennessee caselaw than the approach under which trial courts have great discretion over whether to

---

[5]We note that the holding in *Goodson* has been partially superceded by statute, but the superceded portion of the case is unrelated to our analysis. *See Craig v. Craig*, 406 S.E.2d 656, 658 (N.C. Ct. App. 1991).

allow credit for payments made directly to a child. Therefore, we hold that a trial court may give credit for such payments only under specific circumstances that would create an injustice if credit were not given. Therefore, we consider whether this case presents such a specific circumstance.

In addressing whether Father should receive a credit for the checks made payable to Garrick in the case at bar, we are mindful that "the purpose of [a child support] payment is to fulfill the non-custodial parent's obligation to contribute to the child's support." *Rutledge v. Barrett*, 802 S.W.2d 604, 607 (Tenn. 1991) (emphasis omitted). The facts are essentially undisputed. Mother readily admits that she received all of the checks made payable to Garrick, that the checks were made for the proper court-ordered amount, and that she was aware that Father intended them to be considered as his court-ordered child support payments. Mother concedes as well that she endorsed the checks, deposited them into the account that she had establish for Garrick's support payments, and maintained control over the funds at all times. She was asked specifically, "So Garrick doesn't have control over this money, you do?" Mother responded, "Right." The evidence showed that Father, Mother, and Garrick were all aware that Father made these payments in order to satisfy his child support obligation under the operative order. In exercising control over the funds, Mother chose to use only $5,000 for necessities and permitted Garrick to use some of the monies to purchase items that might be considered luxuries, not necessities. Mother did not inform Father that she was treating the proceeds from his checks as "gifts" rather than child support, over the six years in which Father made the checks payable to Garrick.

Under the specific circumstances of this case, we agree with the trial court that it would be inequitable not to allow Father credit against his child support obligation for the six years of child support checks made payable to Garrick. Like the trial court, we note that it was inappropriate for Father to make the checks payable to the child, most likely an improper attempt to control Mother's use of the funds. If so, however, it ended up being a rather ineffectual gesture; Mother received the checks, endorsed them, deposited them, and had unfettered control over the disposition of the proceeds. The fact that Mother used some of the funds for luxuries, as though Father's checks were gifts to the child, is of no consequence; the fact that she received the money and exercised full control over it are the critical factors. Thus, while it cannot be said that Mother agreed to Father's practice of making the checks payable to Garrick, in this case, this practice did not actually interfere with her control of the child support funds. Permitting Mother to collect these monies from Father again as a child support arrearage would unjustly enrich Mother and lead to an inequitable result. Therefore, we recognize a limited exception to the general rule and permit Father a credit against his child support obligation under the specific circumstances in this case, where Mother received the checks made payable to the child, without affecting her right and obligation to control how the child support monies were spent. Accordingly, we conclude that the trial court acted properly in giving Father credit for the child support checks that were made payable to Garrick and received by Mother.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Greta Denise Smith (Austin) and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE