# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 20, 2011 Session

## KIRK ALAN ESTES v. KATHY JO ESTES

**Appeal from the Circuit Court for Williamson County**
No. 06358     Robbie T. Beal, Judge

**No. M2010-01243-COA-R3-CV - Filed April 16, 2012**

Father and Mother were divorced in 2001 and Father was ordered to pay child support. The parties reconciled in 2002 and began living together but did not remarry. They had another child in 2004. They shared a bank account during their period of reconciliation into which Father deposited his paychecks and from which Mother paid the family's living expenses, including the children's expenses. The parties separated again in 2006. Father did not give Mother child support payments during their four years of living together, but resumed paying child support once they separated again in 2006. Father filed a petition to modify the parenting plan, and Mother filed a counter-petition seeking child support payments for the period from 2002 through part of 2006 when she and Father resumed cohabitation. The trial court gave Father credit for the necessaries he paid for the children's support during the reconciliation period but ordered Father to pay Mother $32,886 for child support payments that accrued during that time as well as health insurance premiums and medical expenses that Mother paid over that period. Mother appealed the trial court's refusal to award her child support for the child born during the parties' reconciliation, and Father appealed the trial court's refusal to give him more credit for his contribution to the children's necessaries during the reconciliation period. We affirm the trial court's judgment denying Mother's request for support for the child born during the parties' reconciliation, but reverse the judgment ordering Father to pay child support during the time the parties were living together as a family unit.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ. joined.

Joseph Y. Longmire, Jr., Hendersonville, Tennessee, for the appellant, Kathy Jo Estes.

Robert J. Turner, Nashville, Tennessee, for the appellee, Kirk Alan Estes.

**OPINION**

Kathy Jo Estes ("Mother") and Kirk Alan Estes ("Father") were married in 1994. They had two sons born in 1995 and in 1996. Mother and Father separated in 1998 and were granted a divorce in 2001. The Permanent Parenting Plan provided that Father was to make child support payments to Mother in the amount of $1,270 each month.

Mother moved with the children to Illinois. Father dutifully paid his child support obligations to Mother each month until April 2002, when the parties began to make plans for Mother and the children to move back to the Nashville area and live with Father as a family again. Father testified he did not pay Mother child support for the months April or May of 2002 while he was helping Mother pay moving expenses and anticipating living as a family again. In June 2002, Mother and the boys began living with Father in his house.

From June 2002 through August 2006 Mother and Father were living together in the same house as they had when they were husband and wife. Mother and Father had a third son born in November 2004 during their period of reconciliation. The parties shared a joint bank account from which the family's living expenses were paid. Mother worked during part of the four-year period of cohabitation and deposited checks into the parties' joint account initially. Sometime in 2004 Mother opened a separate account and began depositing her paychecks into this account. Father did not have a separate checking account during this period and deposited all of his paychecks into the joint account. The evidence showed Mother always had unlimited access to the parties' joint account.

The parenting plan attached to the Final Decree of divorce directed Father to "maintain medical/hospital insurance for the children." Uncovered medical expenses, including deductibles, were to be divided equally between Mother and Father. The evidence submitted during the hearing shows that during the parties' reconciliation Father paid the health care premiums for the children through October 2003 and that Mother paid the premiums through deductions in her paycheck starting in November 2003 and continuing through August 2006. Mother and Father decided to change the children over to Mother's insurance because Mother's employer offered insurance with lower premiums for the children's coverage.

Father testified that during the time the parties and their children lived together he did not give Mother a monthly check for child support because they were living together as a family and sharing a bank account out of which the family's expenses were paid. Father explained that "Ms. Estes could, at any time, go into that joint account and withdraw $1,270

a month."

Mother and Father separated again in August 2006, and Father immediately resumed making child support payments to Mother. In October 2006 Father filed a petition to modify the parenting plan that was still in effect from 2001, when the parties were divorced, in which he sought more time with his children. Mother filed a counter-petition seeking back payments of child support for the months April and May 2002, when the parties were coordinating Mother's move back to Tennessee to join Father in his house, as well as for the parties' four-year period of cohabitation. She also sought retroactive child support for the youngest child born during the parties' reconciliation dating from the time of his birth until the entry of an award. Finally, Mother sought reimbursement for the children's health insurance premiums she paid during part of the parties' reconciliation as well as some uncovered medical expenses she paid for during this period.

## I. TRIAL COURT PROCEEDINGS

The trial court held a hearing on October 8, 2009. By the time of the hearing the parties had resolved Father's concerns about his parenting time, and the only issues left were those Mother raised in her counter-petition for back payments of child support and reimbursement for health care premiums and some medical expenses. Following a hearing in which both Mother and Father testified, the court addressed each of Mother's requests for child support and reimbursement.

With regard to the child support payments for April and May 2002, the court held Father was liable for those two months, explaining:

> [T]here may have been some preparation for Ms. Estes to come and live here and take up residence in June with [Father], [but] the Court is not going to accept that . . . any expenses related to those preparations benefit the child. So there is no basis for the Court to give [Father] any relief on those two months. [Father] owe[s] the full amount of child support that was ordered, $1,270, for both of those months.

The court held Father was responsible for reimbursing Mother for the health insurance premiums as well, stating:

> [Father] w[as] ordered to pay the health insurance. The Court clearly understands the logic that [Father] used in paying - - paying the lesser

premiums. But there is no basis for the Court to grant [Father] any relief for the health insurance. [Mother] spent $5,615 on health insurance. And she should receive by court order $5,615.

The court granted Mother half of the uncovered medical expenses as well, in the amount of $731. In awarding this, the court explained:

Just because [Mother] ha[s] access to the funds doesn't relieve [Father] of the child support obligation that [he] owe[s]. The whole point of the child support obligation is that she never has to ask. She never has to do anything. It's to be delivered to her.

The trial court then turned to the child support payments that accrued while the parties were living together after they were divorced. The court gave Father credit for the children's "necessaries" that he paid while Mother and Father were living together as husband and wife, and granted Mother a judgment for the difference between the "necessaries" it determined Father paid and the child support that accrued during the period from June 2002 through August 2006.

The court calculated the amount to credit Father by first determining which expenses Father listed as those he paid during the parties' reconciliation were actually for the children's "necessaries." Recognizing that Mother and Father shared a joint checking account and that both Mother and Father contributed money to that account, the court reduced the children's expenses Father claimed he paid by a third, explaining that Mother was deemed to have paid one-third of the expenses based on her contributions to the account. The court then treated half of what was left as Father's support of the two children covered by the parenting plan, explaining that the other half was for Father's expenses for himself. In the end, the court determined that Father owed Mother $24,000 in retroactive child support for the older two children for the period June 2002 through August 2006.

The court ordered that no execution would issue on the $32,886 judgment (the total of child support arrearage and refund of insurance premiums and share of uncovered medical expenses) the court was awarding Mother. Instead, the court ordered Father to pay $242 per month in addition to his current child support obligation until the full amount of the judgment was paid. The court denied Mother's request for pre-judgment interest on the arrearage.

The court determined there was no arrearage with respect to the parties' youngest child who was born during the parties' reconciliation. The court found Father was

-4-

supporting the youngest child appropriately while they were all living together as a family. The parenting plan attached to the Final Decree granting the parties a divorce in 2001 did not apply to the youngest child because he was not born when the parties were divorced. Therefore, the court explained, there was no arrearage as to him.

Mother requested her attorney's fees and discretionary costs, which the trial court did not grant. The court explained why it was denying Mother's request for these fees and costs:

> With regard to attorney's fees - - this is where equity can apply. The Court specifically does not find Mr. Estes in any type of contempt - - civil or - - in my opinion - - criminal. The Court believes that he did not willfully disobey a court order. He may have erroneously believed that - - that he was supporting the children. But certainly there was no willful conduct to disregard a court order here. The Court believes that certainly attorney's fees are not required.

With respect to discretionary costs, the court said:

> The Court . . . is not required to award discretionary costs. And while the Court has no problem with the reasonableness of those costs and will find for purposes of the record that the costs are reasonable, I don't believe the Court would be acting with the intent of its order by awarding discretionary costs at this time. Quite frankly, the Court has attempted to give the father basically all the credit when it comes to anything discretionary that the Court can order. Basically I've given the father that credit, and I think it's appropriate that I give the father the credit on this. The Court is going to decline to award either party any discretionary costs.

Mother was not satisfied with the trial court's judgment and filed a Notice of Appeal with this Court. In her brief Mother claimed the trial court erred by (1) giving Father credit for the children's expenses he paid during the parties' reconciliation; (2) refusing to award a child support arrearage for the youngest child born during the parties' reconciliation; (3) denying Mother's request for pre-judgment interest on the child support arrearage; (4) denying Mother's request for immediate execution authority on her arrearage award; and (5) denying Mother's request for attorney's fees and discretionary costs.

Father raised additional issues, arguing the trial court erred by (1) failing to find Father *de facto* paid monthly child support payments by depositing all of his income into the parties' joint bank account that was used for the children's expenses; and (2) failing to award Father full credit for all the children's necessaries he paid during the parties' period of

cohabitation.

## II. STANDARD OF REVIEW

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

## III. FATHER SATISFIED HIS CHILD SUPPORT OBLIGATIONS DURING THE PERIOD OF RECONCILIATION

Father argues that he satisfied his child support obligations throughout the period of time when the parties cohabited with their children, from June 2002 through August 2006, by depositing all his paychecks into the parties' joint account. Father explains that Mother had full access to this joint account and could have written herself a check for the $1,270 child support amount each month. There was no evidence presented that Mother's access to this account was restricted in any way or that the balance in the account was ever insufficient to cover the child support monthly amounts.

We can find no case in Tennessee that has the same facts we have in this case. There are a few cases, however, that we can look to for guidance. In *Smith v. Smith*, 255 S.W.3d 77 (Tenn. Ct. App. 2007), the child support order directed the father to pay child support directly to the mother. *Id*. at 78. The father made his child support checks payable to the mother for five years. When the mother remarried, however, the father began making the child support checks payable to the child rather than to the mother. *Id*. at 78. The mother did not treat the checks any differently when they were made out to the child. She continued to endorse the checks and deposit them into the same account where she had been depositing all the other child support payments, and she maintained control over the use of the funds at all times. *Id*. at 79. Nevertheless, six years after the father began making his child support checks payable to the child, the mother asserted a claim for child support arrearages. *Id*. She claimed the father had not made proper payments as required under the divorce decree for the preceding six years and argued against giving the father any credit for the child support checks made payable to the child. *Id.*

In determining whether to credit the father for the child support payments he made payable to his child, the *Smith* court reviewed how courts from other states have handled similar fact scenarios. Under the more liberal approach, it found courts are permitted to "weigh all equitable considerations," including whether allowing a credit to the obligor

parent would result in an injustice to the obligee parent or whether disallowing a credit would unjustly enrich the obligee parent. *Id*. at 83. Under the more conservative approach, it found the obligor parent is given credit for payments made directly to the child "only under specific circumstances that would result in an injustice if credit were not given," such as where the parties have consented to the arrangement. *Id*. at 84. The courts following this approach have recognized that:

> the custodial parent should have unfettered discretion over how to use child support proceeds, and the obligor parent should not be able to inhibit the exercise of that discretion unilaterally. However, the custodial parent is prevented from objecting if he or she has entered into an agreement with the obligor for payments to be made directly to the child or in a manner contrary to the child support order.

*Id*. (citing *Guri v. Guri*, 448 A.2d 370, 372 (N.H. 1982)). Finding the more conservative approach to be more in line with existing Tennessee case law, the *Smith* court concluded that a trial court may give credit to the obligor parent for payments made directly to the beneficiary child "only under specific circumstances that would create an injustice if credit were not given." *Id*. at 85. Under the facts of *Smith*, the court held it would be inequitable not to give the father credit for the six years of child support checks made payable to the child. *Id*. The court explained that "the fact that [the mother] received the money and exercised full control over it are the critical factors." *Id*. Thus, even though the mother did not expressly agree to the father's decision to make the checks payable to the child, the father's practice did not interfere with her control over the funds. The *Smith* court concluded:

> Permitting Mother to collect these monies from Father again as a child support arrearage would unjustly enrich Mother and lead to an inequitable result.

*Id*. at 86.

The facts of *Netherton v. Netherton*, 1993 WL 49556 (Tenn. Ct. App. Feb. 26, 1993), are similar to the facts here in that after the mother and father were divorced, they reconciled and lived together as husband and wife for a number of years. *Id*. at *1. While they were living together post-divorce the parties shared a joint back account, and the father's earnings were used to pay the household expenses, including care of the children. After the parties separated again the mother tried to collect the child support payments that had accrued during the parties' reconciliation. *Id*.

The father relied on *Oliver v. Oczkowicz*, 1990 WL 64534 (Tenn. Ct. App. May 18,

1990), to argue he should be given credit for the children's "necessaries" that he paid for while he and the mother were living together as a family after the divorce.[1] *Id*. at *2. The *Netherton* court agreed, stating:

> The amount of support he was originally ordered to provide is not being changed. We are merely acknowledging that he provided support when the parties were sharing a household after the divorce and deducting it from the gross amount he was to have paid to date.

*Id*. at *2.

The trial court in the instant case relied on the *Netherton* case to determine the amount to credit Father based on the necessaries of the parties' children he paid for while Mother and Father cohabited from June 2002 through August 2006. Mother argues the trial court erred by granting Father any credit for providing the children's necessaries because the court did not find Mother had failed to provide for the children's necessaries during the parties' reconciliation. Father, on the other hand, argues the court erred by failing to find Father *de facto* paid his monthly child support payments in full by depositing all of his income into the joint account that was used for the children's necessaries.

The statute addressing child support provides in pertinent part:

> Any order for child support . . . shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties. If the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears, shall become a judgment for the unpaid amounts, and shall accrue interest from the date of the arrearage, at the rate of twelve percent (12%) per year. All interest that accumulates on arrearages shall be considered child support. . . .

Tenn. Code Ann. §36-5-101(f)(1) (2010). The Tennessee Supreme Court has interpreted this section to mean that "[w]hile a child support payment goes, directly or indirectly, to the

---

[1]In *Oliver v. Oczkowicz*, the court considered the propriety of allowing the non-custodial parent to receive a credit against accrued child support payments based on voluntary expenditures the non-custodial parent makes for the benefit of the children that are not made in accordance with the court's order of support. 1990 WL 64534, at *2. The *Oliver* court determined that credit should be given to the non-custodial parent for "voluntary payments made on behalf of the children only where the payment is for the children's necessities which are not being supplied by the custodial parent." *Id.*

custodial parent or guardian of a child, the purpose of the payment is to fulfill the non-custodial parent's obligation to contribute to the *child's* support." *Rutledge v. Barrett*, 802 S.W.2d 604, 607 (Tenn. 1991) (citing *Hester v. Hester*, 443 S.W.2d 28, 31 (Tenn. App. Ct. 1968)) (emphasis in original).

The express words of the statute governing child support make it clear that a child support order may not be retroactively modified. *See Rutledge*, 802 S.W.2d at 605-06 (prior to its amendment, section 36-5-101 permitted child support order to be modified retroactively if the obligor parent could prove he or she was unable to pay the full amount through no fault of his or her own). By providing the obligor parent with a credit for paying the children's necessaries not paid by the custodial parent, the *Netherton* court did not retroactively modify the child support order. Instead, it applied a credit to the arrearage owed by the obligor parent to determine the accrued child support then due. As the Tennessee Court of Appeals explained in *Hartley v. Thompson*, 1995 WL 296202, at *3 (Tenn. Ct. App. May 17, 1995), credits against a child support arrearage do not violate the child support statute so long as the amount of child support is not altered.

Unlike *Netherton*, the *Smith* court did not consider whether the father paid for the child's "necessaries" to determine an amount of credit to which he was entitled. Rather, the *Smith* court determined the father satisfied his child support obligation by continuing to remit the same amount of child support each month, even though the checks were made payable directly to the child. In the case before us, Father deposited into the parties' joint bank account each month more than the amount of child support he was required to pay throughout the time Mother and Father were cohabiting from June 2002 through August 2006. Father was required to pay $1,270 each month in child support, and the evidence shows he deposited over $5,000 into the parties' joint account each month.[2]

The evidence submitted at trial shows that most of the children's expenses were paid out of the parties' joint account. Mother testified she paid for some of the children's expenses out of an account she opened in 2004 that Father did not have access to, but she was free at all times to pay for all the family's expenses from the parties' joint account. As was the case in *Smith*, Mother was able to exercise control over the money in the joint account at all times from June 2002 through August 2006. There was no evidence that Father limited Mother's access to the joint account or ever asked Mother not to use the money he earned for anything she chose to buy, either for herself or for the children. While Mother deposited her earnings in the joint account for some period of time, she later opened her own

---

[2]There were a few nonsequential months during the four years in which Father deposited less than $5,000 into the account, but there was no evidence suggesting the family's expenses could not be covered by the balance left in the account or that Father put any of his income out of Mother's reach.

separate account, but still had access to Father's earnings in the joint account.

Based on the facts of this case, we conclude Father satisfied his obligation to pay $1,270 a month in child support throughout the parties' period of reconciliation, from June 2002 through August 2006.[3] As a result, we reverse the trial court's judgment to the extent the court awarded Mother an arrearage for child support in the amount of $24,000.[4]

Important to our decision are the facts that the parties and their children lived together as a family and paid expenses from a joint account. Mother agreed to and participated in this arrangement, and it would be inequitable to award Mother past child support under these circumstances.

With regard to Father's obligation to provide health insurance for the children, the evidence showed that Mother's employer offered lower-priced premiums for the children's coverage than Father's employer offered. As a result, Mother added the children to her insurance plan and had the premiums deducted from her paycheck for the period November 2003 through August 2006. We believe it is inequitable to require Father to reimburse Mother for these premiums because he deposited 100% of his income into the parties' joint account throughout the time the parties were living together as a family again after the divorce. Mother was capable of writing herself a check from the parties' joint account for the amount of premiums she paid for the children's insurance at any time from November 2003 through the date in August 2006 when the parties separated again.

We reach the same result with respect to the medical expenses not covered by the medical insurance. The evidence suggests the medical expenses for which Mother sought reimbursement were mostly for copayment amounts that were due when Mother took one of the children in to see a physician. As with the insurance premiums, Mother could have written herself a check from the joint account at any time to reimburse herself for these expenses, or she could have paid these expenses directly from the joint account. We reverse the trial court's judgment awarding Mother $731 for medical expenses.

## IV. THE TRIAL COURT PROPERLY DENIED MOTHER'S REQUEST FOR

---

[3]Because the parties were living together as a family during this time and were sharing a joint bank account into which Father deposited all of his income, there is no need to consider whether Father paid for the children's "necessaries" that Mother failed to pay or whether Father is entitled to a credit for his payment of these necessaries. We are not compelled to follow any persuasive authority to the contrary.

[4]Father did not contest the trial court's award to Mother of child support payments for April and May 2002, prior to the time Mother and Father began living together as a family again after the divorce. Therefore, that judgment for $2,540 (2 x $1,270) stands.

**RETROACTIVE CHILD SUPPORT FOR THE YOUNGEST CHILD BORN DURING THE PARTIES' RECONCILIATION**

Mother and Father were living together when their youngest child was born in November 2004. The evidence supports the trial court's finding that Father was supporting the youngest child appropriately throughout the time the family was living together from the time of the child's birth until Mother and Father separated for the second time in August 2006. Once the parties separated in August 2006, Father began sending Mother child support payments again in accordance with the 2001 Parenting Plan attached to the Final Decree granting the parties a divorce.[5] Mother argues the Tennessee Child Support Guidelines direct an award of retroactive support for their youngest child from the time of his birth until the court entered a modification of Father's child support obligations in February 2008.

Trial courts are given broad discretion in matters of child support. Appellate courts review the trial court's determination using the abuse of discretion standard of review. *State ex rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 197 (Tenn. Ct. App. 2001); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

The statute governing Orders of Parentage indicates that once parentage is established and the father of a child is identified, child support shall be awarded retroactively to the date of the child's birth, pursuant to the child support guidelines. Tenn. Code Ann. § 36-2-311(a)(11)(A). Tennessee Child Support Guideline 1240-2-4-.06, upon which Mother relies, is entitled "Retroactive Support" and provides:

(1) Unless the rebuttal provisions of Tennessee Code Annotated §§36-2-311(a)(11) or 36-5-101(e) have been established by clear and convincing evidence provided to the tribunal, then, in cases in which initial support is being set, a judgment must be entered to include an amount of monthly support due up to the date that an order for current support is entered:

(a) From the date of the child's birth:

1. In paternity cases; or,

2. Where the child has been voluntarily acknowledged by the child's putative father as provided in Tennessee Code Annotated § 24-7-11, or pursuant to the voluntary acknowledgment

---

[5]Father testified he mistakenly paid Mother $1,300 per month for a time after the parties' 2006 separation instead of the $1,270 he was required to pay.

procedure of any other state or territory of the United States that comports with Title IV-D of the Social Security Act, or, as applicable;

(b) From the date:

1. Of separation of the parties in a divorce or in an annulment; or

2. Of abandonment of the child and the remaining spouse by the other parent in such cases; or

3. Of physical custody of the child by a parent or non-parent caretaker.

Father has acknowledged the parties' third child as his own and is listed as the father on the child's birth certificate. The evidence supports the trial court's finding that Father supported the third child appropriately from the time of his birth through the time the parties separated in August 2006. "The goal of the statutes and regulations governing child support is to assure that children receive support reasonably consistent with their parent or parents' financial resources." *Kaatrude*, 21 S.W.3d at 248-49 (citation omitted).

There is no question in this case that the parties' youngest child received support consistent with his parents' resources. The statute and child support guidelines addressing retroactive child support apply in situations where the father has not provided support for the child, which is not this case. *See, e.g., In re T.K.Y.*, 205 S.W.3d 343 (Tenn. 2006) (mother was seeking retroactive support and biological father had not provided for child since child's birth); *K.A.G. v. B.L.I.*, 2009 WL 4175861, *1 (Tenn. Ct. App. Nov. 25, 2009) (biological father provided no support for the child prior to mother's petition seeking legitimation and retroactive child support); *In the Matter of E.G.B.*, 2009 WL 1605569, at * (Tenn. Ct. App. June 4, 2009) (mother seeking retroactive child support from father who provided no support to child since child's birth).

Mother cites no cases in which a court has ordered a parent to pay retroactive child support for a child born following the parents' divorce but during the parents' reconciliation in circumstances like these where the child has continuously been well-cared for. In view of the language of the statute, it may have been more proper for the trial court to first set an amount for back child support and then to find no arrearage was due because Father had in fact supported the child. In any event, the situations in the guidelines provision set out above do not precisely fit the situation in this case.

We hold the trial court did not abuse its discretion by denying Mother's request for retroactive child support for the parties' third child for the period from the child's birth until the trial court modified Father's child support obligation in February 2008.[6]  Accordingly, we affirm the trial court's judgment denying Mother retroactive child support for the third child born during the parties' reconciliation.

## V.  MOTHER IS ENTITLED TO PREJUDGMENT INTEREST ON THE CHILD SUPPORT ARREARAGE FATHER OWES FOR APRIL AND MAY 2002

Mother asked the court to award her prejudgment interest on her child support arrearage award, which the court denied.  The court explained that "it is in the discretion of the Court as to whether it should be required and believes herein that equity demands that pre-judgment interest should not be required nor ordered to be paid by the Petitioner/Father."

Since we have reversed the trial court's award to Mother, the issue of prejudgment interest on those amounts is moot.  As explained earlier, the trial court awarded Mother back child support for the months of April and May 2002, when Mother and the children were preparing to move back to Tennessee.  Father has not appealed this ruling. Tennessee Code Annotated section 36-5-101(f)(1) provides that "[i]f the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears, shall become a judgment for the unpaid amounts, and shall accrue interest from the date of the arrearage, at the rate of twelve percent (12%) per year. . . ."  We thus reverse the trial court's judgment to the extent it failed to grant Mother prejudgment interest on the child support payments Father failed to pay for the months April and May 2002, which amount totals $2,540.00.  We remand to the trial court for calculation of the interest due on these payments and for consideration of the method of payment.[7]

## VI.  THE TRIAL COURT PROPERLY DENIED MOTHER'S REQUEST FOR ATTORNEY'S FEES AND DISCRETIONARY COSTS

---

[6]The trial court entered a second Parenting Plan in January 2008 modifying the Parenting Plan dated September 28, 2001.  The parties' third child was included in this plan, and during a hearing in February 2008 Father's child support payments were reduced from $1,270 per month to $1,208 per month.  Thus, Mother received at least $62 more in child support payments each month between September 2006 and March 2008 (when Father was ordered to begin making the modified payments) than she received prior to this time.   In other words, there was never a time when Father was not providing support for his youngest child.

[7]In light of our holding that Father's child support arrearage is limited to $2,540 plus prejudgment interest at the rate of 12% per year, we need not address Mother's argument that the trial court erred by permitting Father to pay the arrearage over time rather than granting Mother an execution for the full amount.

Mother asked the trial court to order Father to pay her attorney's fees and to reimburse her for her discretionary costs, both of which the court denied. Courts in Tennessee follow what is known as the American Rule, where litigants are required to pay their own attorney's fees unless a statute or contractual provision provides otherwise. *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn.2000)). Tennessee Code Annotated section 36-5-103(c) permits the trial court to award a litigant attorney's fees in cases involving alimony and child support. However, the trial court has discretion in deciding whether or not to award these fees, and the appellate court will not interfere with the decision unless there is a clear showing of abuse of that discretion. *Taylor*, 158 S.W.3d at 359 (citing *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn.1995)).

Mother cites the rule permitting the trial court to award her attorney's fees but fails to set forth an argument explaining how the trial court abused its discretion in denying her fees. In view of our reversals of most of the award herein, we affirm the trial court's judgment denying her an award for attorney's fees.

We next turn to Mother's request for discretionary costs. Tennessee Rule of Civil Procedure 54.04 provides that discretionary costs include reasonable and necessary court reporter expenses for depositions and trials, reasonable and necessary expert witness fees for depositions and trials, reasonable and necessary interpreter fees for depositions and trials, and guardian ad litem fees. The prevailing party is entitled to collect these discretionary costs if the trial court orders the losing party to pay them, which trial court has discretion to award or deny.

Rule 54.02(2) provides in pertinent part:

In the event an appeal results in the final disposition of the case, under which there is a different prevailing party than the prevailing party under the trial court's judgment, the new prevailing party may request discretionary costs by filing a motion in the trial court, which motion shall be filed and served within thirty (30) days after filing of the appellate court's mandate in the trial court pursuant to Rule 43(a), Tenn. R. App. P.

While Mother prevailed on more claims than Father at the trial court level, Father prevailed on most of the issues on appeal. Consequently, Mother has no basis to claim discretionary costs. In any event, we hold the trial court did not abuse its discretion in denying Mother these costs at the conclusion of the trial.

## VII. Conclusion

For the reasons stated above, we affirm the trial court's judgment denying Mother retroactive child support for the parties' child born in 2004 from the date of his birth to the time the trial court modified Father's child support obligations in 2008 and denying Mother her attorney's fees and discretionary costs. We reverse the trial court's judgment awarding Mother child support from June 2002 through August 2006, when the parties separated again. We also reverse the trial court's judgment awarding Mother reimbursement for the children's insurance premiums and uncovered medical expenses for the period from May 2002 through August 2006.

This case is remanded back to the trial court for the calculation of any interest due on the reduced award of $2,540 to Mother for retroactive child support and determination of a repayment schedule.

Costs of this appeal are assessed against Kathy Jo Estes, for which execution shall issue, if necessary.

_____
PATRICIA J. COTTRELL, JUDGE