IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 2, 2018

## STEVE ANTHONY CONTRERAS v. KIMBERLY DAWN CONTRERAS (HINSON)

Appeal from the Chancery Court for Henderson County
No. 14974      James F. Butler, Chancellor

_____

### No. W2018-00093-COA-R3-CV

_____

The father in this post-divorce dispute challenges the trial court's determinations regarding his child support arrearage, medical insurance premiums, credits against the arrearage, and attorney fees. Finding no merit to father's arguments, we affirm the trial court's decision.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

George Michael Casey, Jr., Jackson, Tennessee, for the appellant, Steve Anthony Contreras.

Samuel Wayne Hinson, Lexington, Tennessee, for the appellee, Kimberly Dawn Contreras (Hinson).

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

Kimberly Dawn Contreras ("Mother") and Steve Anthony Contreras ("Father") married in 1986 and divorced in 2003. The trial court named Mother the primary residential parent of the parties' three minor children, and Father was ordered to pay child support in the amount of $721.00 per month by wage assignment and to maintain health insurance for the minor children. The parties were to equally divide the children's medical expenses not covered by insurance. In the February 14, 2003 divorce decree, the trial court specified that the final disposition of certain issues as to property division and support were to be reserved for a future hearing. The court addressed some of the

outstanding issues in a February 2004 order, including entering a judgment of $2,169.00 for back child support in arrears on April 24, 2003.[1]

On May 19, 2014, Father filed a Complaint to Terminate Child Support Obligation and to Receive Credit for Necessary Expenses Paid. The parties' youngest child, Michael, graduated from high school on May 16, 2014, and Father requested that the wage assignment order be terminated after the May 2014 child support payment. Father acknowledged that he owed a significant child support arrearage, but asserted that he was entitled to a credit for payments he made on a prepaid debit card in the amount of $17,088.00. Father further alleged that Michael lived with him in Texas from June 2009 through June 2010, "during which time he paid all of the child's living expenses, with no support from [Mother]." Father asserted that he should receive credit for the year the child lived with him in Texas at the rate of $721.00 per month, for a total of $8,652.00.

Mother filed a pro se response to Father's complaint on June 9, 2014, stating that Father never provided health insurance for the three children as required in the divorce decree. She further alleged that Michael, age thirteen (13), went to visit Father for the summer in June 2009 and that Father did not send him back to Mother at the end of the summer. Mother attempted to secure the child's return, but she did not know Father's location. At the end of the school year, Michael was ready to come back to Mother's house. Mother prayed for judgment against Father for the cost of providing health insurance for the three children in the amount of $23,960.00. She further requested that Father be ordered to make monthly payments of $721.00 or a lump sum payment of $40,000.00 to cover his child support arrearage and to pay court costs and attorney fees.[2]

This matter was tried on April 16, 2015. Father testified that, in 2005, he and Mother decided that a debit card would be a convenient way for him to send child support to her from Texas. He admitted being aware that he was supposed to make child support payments through the court. According to Father, one reason Mother agreed to his use of the debit card was that Mother's fiancé or husband "was involved with drugs or alcohol, and it was just—for whatever reason, she said it worked that way, so I agreed with her." Father testified that he thought he put money on the debit card instead of paying child support through the court for about five years or "whatever the records reflect." He introduced into evidence bank records showing the payments he put on the debit card.

---

[1] The hearing on the reserved issues was originally held on April 24, 2003, before Chancellor Joe Morris. Prior to the entry of an order from that hearing, Chancellor Morris passed away. Chancellor Ron Harmon, sitting by interchange, held another hearing on January 7, 2004, and signed the order entered on February 17, 2004. On October 17, 2006, the trial court entered an order of dismissal without prejudice for failure to prosecute as to any remaining issues.

[2] The Department of Human Services issued an administrative order on July 15, 2014, terminating Father's current child support obligation but ordering him to pay down the arrearage at the rate of $771.00 per month beginning on July 1, 2014.

Father further testified that his son, Michael, lived with him in Texas from June 2009 through May 2010. At that time, the other two children had reached the age of majority. Father was still under a court order to pay $721.00 per month in child support as there had been no modification of the original child support order. He paid Mother no child support during that year. Father requested credit for at least what he was to have been paying Mother in child support for that year.

On cross-examination, Father testified that Mother had initially agreed for the debit card to be in the name of their eldest daughter, Jacqueline. Later, they agreed that he needed to add a card for Stephanie. Father stated that Mother did not want her own card. He admitted that there were often fees associated with use of the debit cards.

Father's next witnesses were the three children. Jacqueline testified that Mother knew about the debit cards Father gave to her and Stephanie. Jacqueline used her debit card to buy gas for the car she used to drive herself and her brother and sister around town. She could not recall what else she bought with the card. Jacqueline also testified as follows:

> Q. Okay. Did your mom buy all of you-all's clothes and groceries and things like that?
> A. Yeah. She provided for us.
> Q. Did your dad provide for you?
> A. I want to say he did, yeah. Definitely, yeah. He gave us a card that had money on it. We would do stuff with it. He would provide that.

On cross-examination, Jacqueline stated that Father gave her the debit card directly and that there were no limitations on how she used the money. Jacqueline was giving Mother her checks from work to pay for Jacqueline's car and car insurance. Mother gave Jacqueline money and provided her with food, clothing, housing, and utilities.

Michael testified about his sisters' use of the debit cards. He stated that he had never had a debit card but was sometimes present when one of his sisters used a card to give him money. Michael would use the money to get food with friends. Michael also saw his sisters use their cards to buy food at restaurants and clothing; he remembered that they used a card to buy shoes for him once. Michael further testified that he lived with Mother's husband, Steve Hinson, for a period of time and that Mr. Hinson drank "most of the day." On cross-examination, Michael agreed that there was food at home, that Mother bought them clothes, and that they had a home to live in with utilities.

Stephanie testified by telephone from Texas and recalled that, during the time period from 2005 through 2009, Jacqueline had a debit card in her name and Mother knew about the card. According to Stephanie, she, Jacqueline, and Mother used the card to buy food and clothes, or "anything I needed for sports or that [Michael] needed for

sports." Stephanie stated that Mother would ask the children to ask Father to put money on the card. She also testified that Mother would borrow the card and use it herself. When asked, Stephanie stated that Mr. Hinson drank.

On cross-examination, Stephanie testified that she currently lived in Texas and received financial help from Father for books and other things when she needed assistance. During the time period in question, she reiterated that the children would call Father when they needed something and he would put money on the debit card. She acknowledged that they were living with Mother and she provided them with a home, clothes, and food. Stephanie gave the following testimony:

Q. So these things, maybe, that were being put on the card were, maybe, extra things you wanted or additional things?
A. Yes, ma'am.
Q. Okay.
A. Yes, ma'am. Uh-huh.
Q. You would not have gone without if it were not for the card, would you?
A. No, ma'am.
Q. And the card enabled you to kind of spend freely, didn't it?
A. Yes. We would get extra, like, for sports, or, you know, things like that, yeah.
Q. Your extracurricular activities?
A. Correct.
Q. And the ability to go through, maybe, Sonic or Dairy Queen?
A. Right.
Q. But, of course, like you said, Mom did have food for you at home; right?
A. Yes. Yes, she did.
Q. It wasn't your only source of eating?
A. No, ma'am. Uh-uh.

Father rested his case and Mother testified next. She stated that Father did not provide health insurance as ordered by the court in the 2003 divorce decree. Mother provided health insurance for the children through her work and through Farm Bureau and introduced evidence establishing the costs she incurred to provide health insurance for them. When she worked at SERVPRO from May 2003 through September 2004, health insurance for the children totaled $1,344.96. She then worked at Apria from April of 2005 through February 2007, and the cost of health insurance for the children during this period was $4,395.60. Mother worked at First State Bank from June 2008 through May 2014, when she was providing health insurance only for Michael; the cost for this period was $2,694.84. Mother also had coverage on Michael through a private plan at

Farm Bureau from August 2010 until he graduated from high school at a cost of $3,927.00.

Mother further testified that Father did not pay child support as ordered and that she made efforts to collect child support through the child support enforcement office. Mother did not have Father's address and the child support office could not locate him. In 2008, she began receiving child support payments from Father through the child support receipting unit in Nashville. As to the debit card, Mother testified that she never agreed to receive child support on a card. She knew that Father was putting money on a card for the children, but that was not a substitute for child support. Mother had her own debit card on her own bank account. Mother had no control over how the children spent the money on the debit card or how much money Father put on the card. She provided the children with the necessities, including housing, food, utilities, and medical care. There were times when she had to ask her parents for help. Mother provided a record of all of the child support payments she had received since January 2003.

Mother testified that, in June 2009, Michael went to visit Father for the summer. Right before school was to start, Mother received a phone call from Michael and Father stating that Michael was not coming home. Michael was about to enter the eighth grade. Mother objected; she went to the police department to see what she could do, but they could not find him. Mother went to the child support office. She basically hit a dead end and decided to drop the matter. Michael returned to Mother the following year, "but he was regretful for the year he spent in Texas."

In an order entered on August 6, 2015, the trial court awarded Mother a judgment against Father for child support arrears in the amount of $93,765.37, which included interest on each payment from the date it became due until May 31, 2014, and for medical insurance premiums in the amount of $12,362.40. Both of these amounts were subject to post-judgment interest. The trial court further awarded Mother attorney fees in the amount of $2,500.00 and court costs. The trial court appointed the clerk and master as a special master to determine from Father's bank records the amounts placed on the debit cards between 2005 and May 1, 2007; the amounts placed on Stephanie's debit card between June 1, 2007 and May 2008; and the items that were bought with the debit cards during these two time frames "so that the Court may determine any credits . . . to be awarded to the Father against his child support arrears." The court directed the special master to report her findings to the court "within a reasonable period of time after she has the opportunity to meet with counsel and/or the parties, or both." The court would then determine, "[w]ithin a reasonable period of time, not to exceed sixty days," how much, if any, credit Father was entitled to receive.

Father filed a motion to alter or amend the trial court's August 6, 2015 judgment. After the hearing, Father issued a subpoena duces tecum to the attorney general's office for Father's child support file, and the State's records showed a total child support

arrearage of $28,149.61 as of May 30, 2015, significantly less than Mother's figure of $43,228.61. Father asserted that "the portion of the Court's Judgment setting his arrears at $93,765.37 should be altered or amended to reflect what he truly owes in child support arrears." He further argued that Mother did not serve him with a counter-complaint for health insurance premiums and that the portion of the court's judgment awarding her health insurance premiums should be altered or amended. Father also asserted that the trial court's award of attorney fees against him should be eliminated and that the trial court failed to rule upon Father's request for attorney fees. Furthermore, Father alleged that the clerk and master, Leigh Milam, had a personal relationship with Mother and that an outside third party should be appointed to act as special master. Mother responded in opposition to Father's motion to alter or amend.

A hearing on Father's motion to alter or amend was held on October 1, 2015. Father produced a document signed by Mother appearing to be a declaration of arrears owed by Father; it was sworn to by Mother on February 27, 2008. The affidavit stated that the arrears as of that date were $36,050.00. The trial court noted that Father did not present this evidence at trial. As stated in the trial court's letter ruling entered with its order denying the motion to alter or amend on December 17, 2015, "Mother pointed out at the hearing that the state records were disputed all along . . . ." The trial court rejected Father's challenges regarding the health insurance premiums: "This issue was not brought up at the trial, Mother's presentation of testimony concerning this issue was not objected to, and it was in fact an issue tried by acquiescence of the parties." The court likewise rejected Father's arguments regarding the award of attorney fees and costs to Mother and the appointment of a different special master. The issue of whether Father should be awarded any attorney fees would be decided after the court's review of the report of the clerk and master. Therefore, the trial court denied Father's motion to alter or amend the judgment in an order and adopted the findings of fact and conclusions of law contained in its letter ruling.

The special master filed her report on February 4, 2016, along with spreadsheets and other documents. In a letter ruling entered on April 25, 2017, the court found that the credits claimed by Father for the two daughters were "[n]ot proven to be necessaries which Mother failed or refused to provide." Furthermore, there was "no evidence that any of the monies on the debit cards were provided to the Mother to pay for necessities." The court also addressed the period during which Michael lived with Father in Texas and concluded that "Mother did not refuse to provide necessaries for the child, but was deprived of the opportunity to do so." Moreover, "Father was in violation of the parenting Order and parenting schedule and should not be allowed to profit because of such willful violation." The court found that, by the time Father filed his petition in May 2014, the six-year statute of limitations had run on his claim for credit for necessaries accruing prior to May 2008, when his daughters were both adults and had both graduated from high school. The trial court denied Father's claim for credit for necessaries.

In a final order dated December 14, 2017, the trial court summarized all of its previous findings, including a judgment of $93,765.37 in child support arrears in addition to $12,362.40 as reimbursement for insurance premiums. These judgments were both to draw interest at 12% per year through April 16, 2017, because they were both "for child support or in the nature of child support."

On appeal, Father argues that the trial court erred in: (1) awarding Mother a judgment for $93,765.37 in child support arrears, (2) awarding Mother $12,362.40 for health insurance premiums, (3) awarding Mother $2,500.00 for attorney fees, (4) its assessment against Father of court costs paid by Mother, (5) failing to award Father credit for necessaries provided through debit cards given to the parties' daughters, and (6) failing to award Father credit for the time the parties' son lived with him.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Church v. Church*, 346 S.W.3d 474, 481 (Tenn. Ct. App. 2010). Evidence does not preponderate against a trial court's finding of fact unless it "support[s] another finding of fact with greater convincing effect." *Milledgeville United Methodist Church v. Melton*, 388 S.W.3d 280, 285 (Tenn. Ct. App. 2012). Because a trial court is in a better position to observe a witness's demeanor as he or she testifies, a trial court is "accorded significant deference in resolving factual disputes when the credibility of the witnesses is of paramount importance." *Davis v. Davis*, 223 S.W.3d 233, 238 (Tenn. Ct. App. 2006) (citing *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)). A trial court's conclusion of law enjoys no presumption of correctness, however, and we review all issues of law de novo. *ABN AMRO Mortg. Grp., Inc. v. S. Sec. Fed. Credit Union*, 372 S.W.3d 121, 126 (Tenn. Ct. App. 2011); *Estate of Darnell v. Fenn*, 303 S.W.3d 269, 275 (Tenn. Ct. App. 2009).

ANALYSIS

I. Arrearage amount.

Father's first argument is that the trial court erred in calculating his child support arrearage and in awarding Mother a judgment for $93,765.37 in child support arrears. We review determinations related to child support under an abuse of discretion standard. *State ex rel. Lytle v. Webb*, No. M2017-01137-COA-R3-CV, 2018 WL 2304273, at *4 (Tenn. Ct. App. May 21, 2018); *see also Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

Father first makes a procedural argument, which he repeats with respect to subsequent issues. He asserts that Mother's pro se response to Father's petition did not constitute a "legally recognizable pleading" sufficient to "establish arrears, assess

interest, or anything else."  According to Father's argument, Mother failed to comply with Tenn. R. Civ. P. 7.01[3] and "should have been prevented from requesting a judgment for child support arrears and interest, based upon her failure to file an affirmative pleading."

The trial court rejected Father's argument at trial, and we likewise find it to be without merit.  In her response to Father's petition, Mother alleged that Father had failed to pay his child support and requested that he be ordered to pay his child support arrearage.  Pursuant to Tenn. R. Civ. P. 8.05(1), "No technical forms of pleading or motions are required."  "[T]he primary purpose of pleadings is to provide notice of the issues to the opposing party and court."  *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011); *see also Swearengen v. DMC-Memphis, Inc.*, 488 S.W.3d 774, 777 (Tenn. Ct. App. 2015).  Mother's response gave Father notice that she was requesting an award for Father's child support arrearage.  Prejudgment interest is required by statute.  *See* Tenn. Code Ann. § 36-5-101(f)(1).

Father next asserts that the trial court erred in its determination of the amount of his arrearage.  At the hearing in April 2015, Mother introduced Exhibit 10, a spreadsheet showing the amount of child support due each month, the amount paid each month, the amount of interest on each payment multiplied by the number of months due, calculated interest, and the balance due for each monthly payment including accrued interest.  Exhibit 10 showed a total balance due through May 1, 2014 (the date when child support was no longer required) of $93,765.37.  While generally objecting to Mother's arrearage calculation, Father offered no contrary evidence or proof of payments he had made.

After the trial court entered its August 6, 2015 judgment for a child support arrearage of $93,765.37, Father filed a motion to alter or amend supported by records from the State's child support office showing Father's child support arrearage to be $28,149.61 as of May 30, 2015.   The purpose of a motion to alter or amend a judgment "is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005).  The motion should be granted in the following circumstances: (1) "to correct a clear error of law or to prevent injustice," (2) if the law changes before the judgment becomes final, or (3) if additional evidence becomes available that was previously unavailable. *Id.*  We will not reverse the trial court's ruling on a motion to alter or amend unless we find the trial court abused its discretion. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003).  A trial court abuses its discretion when it applies an incorrect legal standard and causes an injustice, reaches a conclusion that is illogical, or resolves a case "'on a clearly erroneous assessment of the evidence.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn.

---

[3] Tennessee Rule of Civil Procedure 7.01 states, in pertinent part:  "There shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; . . . .  No other pleading shall be allowed, except that the court may order a reply to an answer or to a third-party answer."

2010) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). A reviewing court may not substitute its judgment for that of the trial court when reviewing a decision under the abuse of discretion standard. *Id.*

Father argues that the trial court erred in failing to have an evidentiary hearing on his motion to alter or amend in order to resolve apparent discrepancies between the State's records and Exhibit 10. The trial court held a hearing on Father's motion to alter or amend and admitted into evidence the State's complete child support file in this case. These records included an affidavit signed by Mother on February 27, 2008, stating that Father's arrearage as of that date was $36,050.00. This figure does not include interest. The trial court's judgment was based upon a principal arrears figure of $43,228.61. In its letter ruling explaining its decision to deny Father's motion, the trial court noted that "Father did not have this evidence at the trial" and that his "evidence does not include the entire year of 2003."

The parties had a full and fair opportunity to litigate the arrearage issue at the April 2015 hearing, and we find no abuse of discretion in the trial court's denial of Father's motion to alter or amend. Moreover, the evidence does not preponderate against the trial court's determination of the arrearage amount.

II. Insurance premiums.

Father argues that the trial court erred in awarding Mother $12,362.40 for the children's health insurance premiums.

He begins with the same procedural argument that he made above—that Mother failed to make a "legally recognizable pleading" requesting health insurance premiums. In her response, Mother stated that the divorce decree required Father to provide health insurance for the children and that he failed to do so, and she prayed "that she be awarded judgment against [Father] and reimbursed for providing health and hospitalization insurance for the three children . . . ." For the same reasons discussed in section I, we find no merit in Father's procedural argument. Moreover, we decline to continue to address the same issue with each argument.

The only basis for Father's argument that the trial court erred in ordering Mother to be reimbursed for the cost of the children's health insurance premiums is that Mother never "attempted to collect medical insurance premiums from the Father or sought the [aid] of the court in having the Father provide the insurance." No such requirement exists. The original divorce decree required Father to provide the children with health insurance. Because Father failed to do so, Mother bought health insurance for the children. In her response to Father's petition, Mother asked the court to reimburse her for the cost of providing health insurance for the children. The court acted properly in entering judgment for Mother in the amount of $12,362.40.

III.  Attorney fees.

Father argues that the trial court erred in awarding Mother $2,500.00 to cover a portion of her attorney fees.

The governing statute is Tenn. Code Ann. § 36-5-103(c) (2015):

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

This provision specifically authorizes an award to the spouse to whom custody is awarded for "attorney fees incurred in enforcing any decree for alimony and/or child support."  Tenn. Code Ann. § 36-5-103(c).  In her response to Father's petition, Mother sought to enforce the decree for child support, thus bringing her efforts within Tenn. Code Ann. § 36-5-103(c). In cases that involve issues pertaining to child custody and child support, a decision to award attorney fees is within the discretion of the court. Tenn. Code Ann. § 36-5-103(c); *Irvin v. Irvin*, No. M2016-02540-COA-R3-CV, 2018 WL 324453, at *8 (Tenn. Ct. App. Jan. 8, 2018).

We find no abuse of discretion in the trial court's decision to award Mother $2,500.00 in attorney fees.

IV.  Court costs.

Father asserts that the trial court erred in awarding Mother her court costs incurred in this case.  Father's only argument here (other than the procedural argument already addressed above) is that Mother presented no evidence that she paid any court costs and that she did not request court costs at trial.  The latter point is without merit.  In her response to Father's petition, Mother requested "that the court cost . . . incurred in this action be paid by [Father]."  In its August 6, 2015 order, the court stated that "court costs paid by the Mother at the filing of this case be assessed against Father."  If, as Father alleges, Mother paid no court costs, no court costs will be assessed against him.

- 10 -

V.  Credit for necessaries.

Finally, Father argues that he is entitled to two types of credit on his child support arrearage:  (1) for the payments made on the debit card provided to the children, and (2) for the time when his son lived exclusively with him in Texas.

Tennessee Code Annotated section 36-5-101(f)(1) (2014) provides that an order for child support "shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed . . . ."  Thus, as a general rule, "an obligor parent is not given credit for child support payments made in a manner other than that specified in the operative child support order."  *Smith v. Smith*, 255 S.W.3d 77, 83 (Tenn. Ct. App. 2007).  The courts have recognized an exception to this rule when a parent provides necessaries for a child:

> In *Oliver* [*v. Oczkowicz*, No. 89-396-II, 1990 WL 64534 (Tenn. Ct. App. May 18, 1990], this Court allowed "a credit for voluntary payments made on behalf of the children only where the payment is for the children's necessaries which are not being supplied by the custodial parent." *Id.*, 1990 WL 64534 at *2.  "The obligation to provide necessaries requires the provision of appropriate food, shelter, tuition, medical care, legal services, and funeral expenses as are needed." *Peychek* [*v. Rutherford*, No. W2003-01805-COA-R3-JV, 2004 WL 1269313, at *4 (Tenn. Ct. App. June 8, 2004)].  "In order to maintain a successful claim for necessaries, [Father] 'must prove: (1) that the child needed the particular goods or services that were provided, (2) that [Mother] had a legal obligation to provide the goods or services, (3) that [Mother] failed to provide the goods or services, and (4) the actual cost of these goods or services.'" *Id.* (quoting *Hooper v. Moser*, M2001-02702-COA-R3-CV, 2003 WL 22401283, at *3 (Tenn. Ct. App. Oct. 22, 2003)).  The rationale is that a credit against a child support arrearage is not a retroactive modification of support but is given in recognition "that the obligor parent provided the support the court ordered in the first place." *Netherton* [*v. Netherton*, No. 01-A-01-9208-PB00323, 1993 WL 49556, at *2 (Tenn. Ct. App. Feb. 26, 1993)].

*Martin v. Martin*, No. W2014-01007-COA-R3-CV, 2015 WL 2400583, at *4 (Tenn. Ct. App. May 20, 2015).

(1)

Regarding the debit cards given to his daughters, Father argues that the trial court erred in failing to give him credit for necessary expenses he paid for his children and payments he made as child support through the cards.  He cites his own testimony and

testimony of the children and Mother to argue that Mother knew about the cards and that the cards were used to buy necessary items for the children.

Applying the legal principles set out above to the present case, we are in agreement with the result reached by the trial court. The trial court made the following relevant findings in its final order:

> The Court received and carefully reviewed the report of the Special Master, Clerk and Master Leigh Milam, as to the claims for credits for necessaries for the two oldest daughters and finds as follows:
> 1. Not proven to be necessaries which Mother failed or refused to provide.
> 2. That Mother provided the necessities of life such as food, clothing, housing, utilities, medical care and the like during the daughters' minority. Father contributed some child support as credited to him on the spreadsheet attached to the Court's original letter ruling and incorporated into the Judgment.
> 3. The Father provided the two daughters with spending money on debit cards and for extras which they used as they pleased and purchased what they wished, either for themselves or for others. There is no evidence as to who purchased what at any particular time. There is no evidence that any of the monies on the debit cards were provided to the Mother to pay for necessities.
> 4. There is no evidence which purchases by the children using the debit cards were made by any particular daughter, or if it was for them, for friends, or for others.

The evidence does not preponderate against these findings, and Father did not satisfy the elements of the necessaries rule.[4]

(2)

As to the second part of his argument, Father asserts that the trial court erred in failing to award him credit for the time the parties' son lived with him in Texas instead of with Mother. He makes this argument under the necessaries rule.

Father emphasizes that Mother provided no child support to him during the year when their son lived with him and cites *Hartley v. Thompson*, No. 01A01-9502-CV-00044, 1995 WL 296202 (Tenn. Ct. App. May 17, 1995), in support of his request for a remand to allow proof on the amount he spent on his son. Mother did not provide child support to Father during the year when the son was in Texas because, under the operative

---

[4] Father does not dispute that, as to payments made prior to May 2008, the six-year statute of limitations had run on a claim for credit for necessaries.

court order, the son was supposed to be living with Mother in Tennessee. The trial court made the following pertinent findings:

> The child, Alex Contreras, resided with the Father from June, 2009 until May, 2010. During that time, Father provided some necessities for the child such as food, clothing, shelter, utilities, and the like. Mother also provided shelter, utilities, medical insurance, and other items necessary to maintain the household since she had to maintain the home for him to return to. Mother further asserted that Father withheld the child from her during this period and that she was unable to get the child back until the school year was completed in May, 2010. Further, that for the summer months during that period the child was with the Father, that was a normal visitation period and the Father was not entitled to any credit during those months. In any event, the Mother did not refuse to provide necessaries for the child, but was deprived of the opportunity to do so. Father was in violation of the parenting Order and parenting schedule and should not be allowed to profit because of such willful violation.

As the trial court explained, Mother was under no obligation to provide support to Father during the year when the son lived with Father. Father does not need another opportunity to prove his claims; the trial in April 2015 and the hearings before the special master were Father's opportunities to document the payments he made on behalf of his children. Furthermore, Father is not entitled to a claim for necessaries because Mother did not fail to provide for her son; rather, Father deprived her of the opportunity to do so.

We find no abuse of discretion in the trial court's denial of Father's requests for credits against his child support arrearage. We further deny Father's requests for attorney fees and expenses on appeal.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Steve Anthony Contreras, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE